STATE of Indiana, Appellant–Plaintiff,

v.

Sampson BOADI, Appellee–Defendant.

No. 64A05–0807–CR–420.

Court of Appeals of Indiana.

May 13, 2009.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Bryan M. Truitt, Bertig & Associates, LLC, Valparaiso, IN, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Sampson Boadi was charged with several counts of criminal recklessness, including reckless homicide, as a result of an automobile collision that occurred when Boadi, driving a semi tractor-trailer, failed to stop at a red light. At the conclusion of the State's case-in-chief during Boadi's jury trial, the trial court granted Boadi's motion for a directed verdict on all counts on the ground that the recklessness element was not supported by sufficient evidence. Concluding that the trial court properly granted Boadi's motion because the State failed to introduce evidence of more than inadvertence or an error of judgment regarding Boadi's failure to stop at the red light, we affirm Boadi's acquittal.

### Facts and Procedural History

On the clear morning of October 8, 2006, Boadi was driving a semi tractor-trailer northbound on Highway 49 in Porter County, Indiana. The speed limit on Highway 49 is fifty-five miles per hour. Highway 49 intersects Vale Park Road, and there is a stoplight at the intersection. There were no obstructions blocking the view of the intersection. Earl Eaton, a ninety-one year old man, was driving a Buick on Vale Park Road and was first in the line of westbound cars waiting at the red light located at the intersection of Vale Park Road and Highway 49. The light facing Highway 49 shows yellow for 5.1 seconds before turning red. Once the stoplight for Highway 49 turns red, the stoplight at Vale Park Road stays red for two seconds before turning green.

The stoplight facing Highway 49 had turned red, but Boadi nevertheless entered the intersection driving at the speed, as reported by him at the scene and the State's witnesses at trial, of forty miles per hour. Although Boadi's truck was then proceeding into the intersection when the light for Vale Park Road turned green, Eaton, the first in line, drove forward into the intersection. Two witnesses testified that they did not observe Boadi's truck skidding or lurching and did not hear a horn. Another witness testified that he did observe the semi brake suddenly and heard a "one-beep sound, like a honking of a horn" right before the semi entered the intersection. Tr. p. 232. Eaton's car collided with the semi's trailer near the rear wheels as the truck was proceeding through the intersection, and Eaton was killed as a result of the crash. Boadi stopped the semi, and Boadi and several witnesses waited for police officers to arrive on the scene and were then interviewed by the officers. Boadi told the police that he tried to stop as he approached the intersection but felt the truck begin to jackknife, so he released the brake and proceeded through the intersection. *Id.* at 273. Later investigation re-

vealed that the truck's load was properly distributed and secured, that the trailer was properly maintained, and that the anti-lock brake system complied with all regulations. Boadi submitted to testing which revealed no drugs or alcohol in his system. No evidence was presented that Boadi had been driving for longer than allowed by transportation regulations or that Boadi was otherwise fatigued. Sergeant Steve Kobitz with the Valparaiso Police Department testified on cross-examination that Boadi's speed was not a factor in the accident. *Id.* at 328.

The State originally charged Boadi with Class C felony reckless homicide,[1] criminal recklessness as a Class D felony,[2] criminal recklessness as a Class A misdemeanor,[3] Class B misdemeanor reckless driving,[4] and disregarding an automatic signal as an infraction.[5] The State then dismissed the last two counts and filed an amended information charging Boadi with Class C felony reckless homicide,[6] criminal recklessness resulting in serious bodily injury as a Class D felony,[7] and criminal recklessness with a motor vehicle as a Class A misdemeanor.[8]

Boadi's jury trial began on June 23, 2008. At the end of the State's case-in-chief, the trial court granted Boadi's motion for a directed verdict on the basis that the evidence showed only that Boadi ran a red light and "in my view of the law the facts that have been proven do not constitute a major element of each of the crimes," that is, recklessness. Tr. p. 391. The State now appeals.

1. Ind.Code § 35–42–1–5.

2. Ind.Code § 35–42–2–2(c).

3. I.C. § 35–42–2–2(c).

4. Ind.Code § 9–21–8–52.

5. Ind.Code § 9–21–3–7.

## Discussion and Decision

■ On appeal, the State argues that the trial court erred by granting a directed verdict acquitting Boadi of all the charges because a jury could have found from the evidence presented that Boadi's conduct was reckless. The State brings this appeal pursuant to Indiana Code § 35–38–4–2(4), whereby the State may appeal a question reserved by the State if the defendant is acquitted. However, the State is barred by the prohibition against double jeopardy from retrying the defendant after acquittal. *State v. Martin,* 885 N.E.2d 18, 19 (Ind.Ct.App.2008). Although the issue in this case is now moot, we hope to provide guidance for future cases. *Id.* "When presented with such appeals, we will address only questions of law." *State v. O'Grady,* 876 N.E.2d 763, 765 (Ind.Ct.App.2007).

■ Pursuant to Indiana Trial Rule 50, the trial court may withdraw issues from a jury where "all or some of the issues ... are not supported by sufficient evidence[.]" To survive a motion for a directed verdict, the State must present a prima facie case. *State v. Taylor,* 863 N.E.2d 917, 920 (Ind.Ct.App.2007). When considering such a motion, the trial court may not weigh the evidence presented or the credibility of witnesses. *Id.* at 919. The trial court may grant the motion only " 'where there is a total absence of evidence upon some essential issue, or there is no conflict in the evidence and it is susceptible of but one inference, and that inference is in favor of the accused.' " *Id.* (quoting *State v. Patsel,* 240 Ind. 240, 163 N.E.2d 602, 604 (1960)). The trial court in

6. I.C. § 35–42–1–5.

7. I.C. § 35–42–2–2(d).

8. I.C. § 35–42–2–2(c).

a criminal case is not authorized to consider whether a reasonable jury could view the evidence presented as constituting proof beyond a reasonable doubt. *Id.* (citing *State v. Goodrich,* 504 N.E.2d 1023, 1024 (Ind.1987)). On review, the appellate court applies the same standard as the trial court: when considering the propriety of a directed verdict, we "view the evidence in a light most favorable to the party against whom judgment on the evidence would be entered." *Id.* (quotation omitted).

All three of the charges brought against Boadi—Class C felony reckless homicide, criminal recklessness resulting in serious bodily injury as a Class D felony, and criminal recklessness with a motor vehicle as a Class A misdemeanor—require evidence of reckless conduct. "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2(c). Our Supreme Court has previously stated, when deciding whether sufficient evidence supported a conviction for reckless homicide, that "[p]roof that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtlessness of the driver of a vehicle, or from an error of judgment on his part, will not support a charge of reckless homicide." *Beeman v. State,* 232 Ind. 683, 115 N.E.2d 919, 922 (1953).

This Court was faced with a factually similar criminal recklessness case in *Whitaker v. State,* 778 N.E.2d 423 (Ind.Ct.App. 2002), *trans. denied.* In *Whitaker,* the defendant tanker truck driver failed to stop in time to avoid colliding with the car in front of him, which was braking and preparing to make a left turn. 778 N.E.2d at 424–25. The accident occurred on a clear day, the road was dry at the time, the driver was rested, and there was no evidence of either mechanical defect or drug or alcohol usage. *Id.* at 425. The defendant was charged with reckless homicide, and after he was convicted by a jury this Court reversed his conviction due to insufficient evidence. After considering a number of cases in which a reckless homicide conviction arising out of a motor vehicle collision was either reversed for insufficient evidence or upheld on appeal, the Court made the following observation:

> From these cases, we discern the following: relatively slight deviations from the traffic code, even if they technically rise to the level of "reckless driving," do not necessarily support a reckless homicide conviction if someone is subsequently killed. Some gross deviations from the traffic code, however, may under certain circumstances be such a substantial departure from acceptable standards of conduct that they will support a reckless homicide conviction, such as ignoring traffic signals at a high rate of speed, driving on a dark road at night without headlights, or intentionally crossing the centerline without a legitimate reason for doing so. Speed may support a reckless homicide conviction, but only greatly excessive speeds, such as twenty or more miles per hour over the posted speed limit, or where inclement weather and poor road conditions render higher speeds greatly unreasonable.

*Id.* at 426.

In support of its argument that Boadi's conduct was reckless, the State relies on evidence provided by the State's accident reconstruction experts that Boadi had sufficient time to stop the vehicle before the light turned red but failed to do so, evidence that Boadi did not sound his horn before entering the intersection, and evidence that Boadi did not make an effort

to stop the truck before entering the intersection. Instead, the State argues, Boadi disregarded the yellow and red lights and chose to pass through the intersection at will. However, even viewed in the light most favorable to the State, regardless of how far Boadi's truck was from the light when it turned yellow and assuming that Boadi failed to either sound the horn or attempt to stop, the evidence shows only that Boadi failed to come to a complete stop at the red light before entering the intersection even though he had sufficient time to stop. He entered the intersection just as the light for Vale Park Road turned green after the two-second delay wherein the lights for both roads showed red. There is no evidence that Boadi charged the light, that is, accelerated or attempted to beat the light or that Boadi was driving erratically. *See Hughes v. State,* 510 N.E.2d 741, 743 (Ind.Ct.App.1987) (finding defendant's reckless homicide conviction sustained by evidence that defendant disregarded a red light while travelling at a speed approximately double the speed limit); *Drossos v. State,* 442 N.E.2d 1, 6 n. 4 (Ind.Ct.App.1982) (stating that evidence that defendant was intoxicated, ran a red light, and was speeding at such a rate that he could not avoid entering a one-way street the wrong way showed reckless disregard), *reh'g denied.* Rather, Boadi was, by witness accounts, traveling fifteen miles per hour under the speed limit. We must now determine, as a matter of law, whether Boadi's failure to stop in time was evidence of recklessness sufficient to withstand a motion for directed verdict.

The parties have not directed us to, and we have not unearthed, a criminal case addressing whether the failure to stop at a red light, without more, can constitute evidence of recklessness sufficient to establish a prima facie case. However, in a civil action under the Automobile Guest Act,[9] our Court held that failing to look to both sides and stop at an intersection could not constitute willful or wanton misconduct and affirmed the directed verdict in favor of the driver. *Becker v. Strater,* 117 Ind. App. 504, 72 N.E.2d 580, 581 (1947). In that case, the driver was familiar with the area, including the intersection where the collision occurred. The driver slowed down as he approached the upcoming intersection to look at some cattle on one side of the road, but he failed to notice an oncoming car and stop at the intersection's stop sign, resulting in a collision between the two vehicles. The Court stated,

It seems to us clear that the acts of appellant in looking to the left when he was one hundred feet from the intersection and calling attention to cattle in the field could not constitute willful or wanton misconduct. In fact at this point he was recognizing his approach to the intersection by slowing the speed of his car. He continued to slow down until he reached the intersection. His speed had been reduced from thirty-five miles per hour to fifteen or twenty miles per hour. In appellee's conduct to this point there is no evidence of willful or wanton misconduct.

When he reached the intersection he failed to look to his right and *he failed to stop. A jury could properly find either of these acts to constitute negligence. But could they properly find either or both acts to constitute willful or wanton misconduct? We think not.* Mere negligence is not sufficient. The violation of

**9.** The Automobile Guest Act, presently codified as the "Guest Statute" at Indiana Code § 34–30–11–1, provides that a driver is not liable for loss or damage arising out of harm to the driver's close relatives or to hitchhikers unless the harm was caused by the driver's "wanton or willful misconduct."

a statute does not necessarily constitute willful or wanton misconduct.

*Id.* (emphasis added).

■ We conclude that the rule provided in *Becker* should apply in the criminal context as well. This Court has previously found that a rule announced in actions under the Automobile Guest Act should apply in criminal cases as well because of the similarity in definition between "recklessness" in the criminal context and "wanton or willful misconduct" in the civil context.[10] *See Clancy v. State,* 829 N.E.2d 203, 207–08 (Ind.Ct.App.2005) (applying rule under the Guest Statute to criminal recklessness case involving driver who fell asleep at the wheel and declining to adopt a lesser standard of proof in the criminal context than is required in the civil context), *trans. denied.* We have found these cases to be instructive even though the Guest Statute cases concern a defendant host-driver's liability to the injured plaintiff guest-passenger rather than the liability of a third-party driver causing a collision resulting in harm to the injured plaintiff. *Id.* at 207 n. 2. Thus, we conclude that, pursuant to the rule in *Becker,* failing to stop at an intersection cannot, without more, constitute criminally reckless conduct.

This approach comports with the rule utilized in other states. The Kansas Supreme Court faced a very similar factual situation in *State v. Remmers,* 278 Kan. 598, 102 P.3d 433 (2004). In that case, the defendant was driving on a clear day, ran a stop sign due to his failure to pay attention, and collided with a service truck at the intersection. *Id.* at 433–34.

The defendant was charged with reckless driving. Reckless conduct, under Kansas law, is defined as "conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger." *Id.* at 434. The court held that running a red light due to inattentiveness, without more, did not satisfy the recklessness element under the Kansas statute. *Id.* (citing *State v. Krovvidi,* 274 Kan. 1059, 58 P.3d 687 (2002)). The court considered the most pertinent out-of-jurisdiction case provided by the State, *State v. Larson,* 582 N.W.2d 15 (S.D.1998). The defendant in *Larson* was convicted of a criminally reckless motor vehicle crime for speeding in a construction zone in the presence of a visible road crew and veering into a closed lane. The court, distinguishing *Larson,* concluded as follows:

> In the case before us, the evidence shows defendant was driving on a rural road on a clear day. There was no evidence of speeding, swerving, driving erratically, or leaving the scene of the accident. Defendant's statement to the investigating officer was that he was inattentive and failed to see the stop sign or the approaching Smith vehicle. Evidence of defendant's mental state or aggravating circumstances necessary for a conviction of reckless driving is absent. We conclude the evidence herein is insufficient to support defendant's conviction of reckless driving[.]

*Id.* at 435 (citation omitted). *See also State v. Moleta,* 112 Hawai'i 233, 145 P.3d 776, 782–83 (Haw.Ct.App.2006) (reversing defendant's conviction for reckless driving

---

**10.** Under the Guest Statute, " '[w]anton or willful misconduct requires that the host-driver be: 1) conscious of her misconduct; 2) motivated by reckless indifference for the safety of her guest; and 3) know[ledgeable] that her conduct subjects her guest to a prob-ability of injury.' " *Bowman ex rel. Bowman v. McNary,* 853 N.E.2d 984, 995 (Ind.Ct.App. 2006) (quoting *Duncan v. Duncan,* 764 N.E.2d 763, 767 (Ind.Ct.App.2002), *reh'g denied, trans. denied* ).

for disregarding a stop sign); *People v. Rowe*, 9 Ill.App.3d 460, 292 N.E.2d 432, 433 (Ill.App.Ct.1972) ("Driving through a red light does not of itself establish that a motorist was acting recklessly.... Disobeying a traffic signal or driving at an excessive speed, in conjunction with other circumstances indicating a conscious disregard of a substantial risk likely to cause great bodily harm or death, justifies a finding of recklessness.") (citations omitted).

We are persuaded that the failure to stop at a red light due to inadvertence or an error of judgment, without more, does not constitute recklessness as a matter of law. Although the failure to stop at a red light or stop sign is a violation of the traffic code, we cannot say that, without additional circumstances, the failure to stop at a light is a substantial departure from the acceptable standards of conduct sufficient to serve as evidence of recklessness. *See Whitaker*, 778 N.E.2d at 426 ("Some gross deviations from the traffic code, however, may under certain circumstances be such a substantial departure from acceptable standards of conduct that they will support a reckless homicide conviction, such as *ignoring traffic signals at a high rate of speed* [.]") (emphasis added).

■ Viewed in the light most favorable to the State, there is no evidence of additional circumstances sufficient to satisfy the recklessness element of the charges against Boadi. Boadi did not accelerate toward the light; indeed, Boadi traveled through the intersection at a speed below the speed limit. There is no evidence that Boadi was driving erratically or under the influence of alcohol or drugs. There is no evidence that Boadi was fatigued or in any way failing to comply with trucking regulations. Boadi stopped immediately after the accident and did not flee. In sum, the evidence as a whole viewed in the light most favorable to the State shows that

Boadi did not stop but instead proceeded through the intersection as the light turned green for the opposing traffic. Although this conduct might be evidence of inadvertence or an error in judgment, that is, negligence, such an error does not constitute criminal recklessness. *Id.* at 428. Additionally, our conclusion is consistent with Indiana's public policy that "automobile accident deaths caused by negligence, even gross negligence, fall outside the realm of criminal prosecution[.]" *Id.*

The State urges us to find Boadi's case similar to the scenario presented in *Dylak v. State*, 850 N.E.2d 401 (Ind.Ct.App.2006), *trans. denied.* The State is correct that there are similarities between the two cases: both semi-truck drivers were approaching a visible intersection, both had enough distance to stop before entering, and both failed to stop before the light turned red. However, Dylak had violated rules regarding how many hours a driver may drive during an eight-day period and how many hours a driver may drive at one time before resting for a minimum eight-hour period. *Id.* at 409. Dylak also admitted to officers responding to the scene of the collision that he was fatigued. *Id.* Dylak was convicted of reckless homicide, and this Court affirmed the conviction on appeal. However, there is no such evidence of fatigue or rule violations in Boadi's case. We find *Dylak* distinguishable on this ground.

In conclusion, the trial court did not err by acquitting Boadi as a matter of law due to a complete lack of evidence on the recklessness element of the crimes charged.

Affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.