**William HURT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A04–1006–CR–414.

Court of Appeals of Indiana.

March 25, 2011.

Transfer Denied June 22, 2011.

Matthew J. McGovern, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary R. Rom, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

William Hurt appeals his convictions for Class C felony reckless operation of a vehicle in a highway workzone resulting in death and Class C felony reckless disregard of a traffic control device in a highway workzone resulting in death. We affirm in part and reverse in part.

### Issues

The restated and reordered issues before us are:

I. whether Hurt's convictions for both offenses violate the Double Jeopardy Clause of the Indiana Constitution; and

II. whether there is sufficient evidence to support Hurt's conviction for reckless disregard of a traffic control device in a highway workzone resulting in death.

### Facts

On March 24, 2009, an Indiana Department of Transportation ("INDOT") crew was cleaning bridge decks on northbound I–164 in Evansville. I–164 is a four-lane divided highway, with a driving (right) lane and a passing (left) lane on each side, plus an emergency lane, or curb. The weather that day was sunny with no rain. The first bridge the crew worked on that day was the bridge over the Lloyd Expressway, which is at mile marker 7.

At mile marker 4.4, south of Lloyd Expressway, there was a permanent sign stating, "PROTECT HIGHWAY WORKERS—OBEY WORK ZONE SIGNS." Ex. 34. At mile marker 6, there was an orange sign stating in part, "Reckless Driving Max 8 Yrs." Ex. 35. Also at that mile marker were two orange signs on both sides of the road warning of road construction ahead. Just north of those signs were two temporary orange signs on both sides of the road again warning of the maximum penalty for reckless driving. At mile marker 6.4 was an orange sign stating that there would be road construction for the next mile. At mile marker 6.6 were temporary orange signs on both sides of the road warning of road construction ahead. Just north of those signs were temporary orange signs on both sides of the road stating that the right lane was closed ahead. Right before the Lloyd Expressway exit, another sign with a symbol indicated that the right lane was closed ahead.

The INDOT crew completed work on the Lloyd Expressway bridge, broke for lunch, and then moved north approximately 1.5 miles to work on the I–164 bridge over Morgan Avenue. There were no additional road construction signs in place north of the Lloyd Expressway exit; the last sign was located approximately 1.75 miles from the Morgan Avenue bridge. However, INDOT supervisors ordered the placement of three trucks after the Lloyd Expressway to warn drivers of the workers on the Morgan Avenue bridge and closure of the driving lane.

Mark Shepherdson was in the first INDOT truck, located about 1.2 to 1.3 miles north of the Lloyd Expressway and 1.4 miles after the last construction warning sign. Shepherdson's truck is known as an arrow board truck; it had a trailer with a flashing arrow on the back, advising motorists that they must merge from the driving to the passing lane. The truck was parked so that approximately three feet of it overlapped the line between the emergency lane and the driving lane. An INDOT supervisor positioned Shepherdson's truck to ensure that it could be seen by drivers as they descended the hill from the Lloyd Expressway bridge. About 500 feet north of Shepherdson's truck was a second

arrow board truck, parked entirely in the driving lane. North of that truck and about 200 feet from the Morgan Avenue bridge deck was an "attenuator" truck, which is designed to protect highway workers by cushioning blows from accidents.

On that day, Hurt was driving a tri-axle Mack truck. He had made several trips through the work zone that day, making gravel deliveries. At around 2:00 p.m., Hurt loaded his truck with gravel and began driving northbound on I–164. He was followed by another driver hauling gravel, Leonard Webb. Webb was traveling between fifty-five and sixty m.p.h., and he estimated that Hurt was driving faster because he was "pulling away." Tr. p. 206.

As Hurt and Webb approached the Morgan Avenue bridge, Webb merged into the passing lane because of the construction signs he had seen. Webb's view of Shepherdson's arrow board was blocked by Hurt's truck. Webb observed that Hurt never made an attempt to merge into the passing lane or turn on his turn signal, and that Hurt's taillights never came on. Webb, who was about a football field's length behind Hurt at the time, saw Hurt drive into the back of Shepherdson's truck. There was no evidence that Hurt had attempted to brake heavily before striking Shepherdson's truck. Webb did not recall there being any traffic between his truck and Hurt's truck that would have prevented Hurt from merging into the passing lane. The accident occurred between mile marker 8.4 and 8.6. As a result of the accident, Shepherdson died from blunt force trauma to the head. Hurt told one law enforcement officer that he could not remember anything about the accident, but he told another officer that he did remember seeing the work zone signs before the accident occurred.

On April 28, 2009, the State charged Hurt with Class C felony reckless operation of a vehicle in a highway workzone resulting in death and Class C felony reckless disregard of a traffic control device in a highway workzone resulting in death. A jury trial was held on April 14–16, 2010, after which Hurt was found guilty as charged. The trial court entered judgments of conviction for and sentenced Hurt on both counts. Hurt now appeals.

### Analysis

#### I. Double Jeopardy

 We first address Hurt's double jeopardy claims, as it impacts our analysis of the sufficiency of the evidence. To establish a violation of the Double Jeopardy Clause found in Article 1, Section 14 of the Indiana Constitution on the basis of multiple convictions, a defendant must establish that with respect to either the elements of the challenged crimes or the actual evidence used to convict, the essential elements of one offense also establish the essential elements of another offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002). Under the actual evidence test, a defendant must demonstrate that there is a reasonable probability that the evidentiary facts used by the jury to establish all of the essential elements of one offense were also used to establish all of the essential elements of a second offense. *Id.*

The State concedes that Hurt's dual convictions "likely offended [the] Indiana Constitution's prohibition against double jeopardy" under the actual evidence test. Appellee's Br. p. 16. We agree. Indiana Code Section 9–21–8–56(b) provides that "a person who recklessly operates a vehicle in the immediate vicinity of a highway work zone when workers are present commits a Class A misdemeanor." Indiana Code Section 9–21–8–56(e) provides, "a person who recklessly fails to obey a traffic control device or flagman, as prohibited

under section 41 of this chapter, in the immediate vicinity of a highway work zone when workers are present commits a Class A misdemeanor." An offense under either subsection is elevated to a Class C felony "if the offense results in the death of a worker in the worksite." Ind.Code § 9–21–8–56(h).

It is evident that the State relied upon the same evidence at trial to support Hurt's criminal liability under both statutes. More precisely, the evidence of Hurt's reckless operation of a vehicle in a highway workzone was based almost exclusively upon his reckless disregard of traffic control devices. As such, we conclude that Hurt's convictions for both offenses cannot stand. Because the evidence against Hurt appears to more precisely fit within the definition of reckless disregard of a traffic control device within a highway workzone resulting in death, we elect to order vacation of the conviction for Class C felony reckless operation of a vehicle in a highway workzone resulting in death.

## II. Sufficiency of the Evidence

■ We now address whether there was sufficient evidence to support Hurt's conviction for Class C felony reckless disregard of a traffic control device within a highway workzone resulting in death. When reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses, and respect the factfinder's exclusive province to weigh conflicting evidence. *Jackson v. State*, 925 N.E.2d 369, 375 (Ind.2010). We consider only the probative evidence and reasonable inferences therefrom that support the verdict. *Id.* We will affirm if the probative evidence and reasonable inferences from that evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

Reckless homicide or criminal recklessness convictions following automobile accidents frequently have come before Indiana appellate courts. Hurt in particular relies heavily upon two cases: *Whitaker v. State*, 778 N.E.2d 423 (Ind.Ct.App.2002), *trans. denied*, and *State v. Boadi*, 905 N.E.2d 1069 (Ind.Ct.App.2009). In *Whitaker*, a tanker truck driver killed the driver of a vehicle in front of him when he rear-ended the vehicle. The truck driver had been following about two to four car lengths behind the vehicle at about five miles per hour above the posted speed limit. The truck driver was charged with and convicted of reckless homicide.

On appeal, we reversed the conviction. We noted, " 'Proof that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtfulness of the driver of a vehicle, or from an error of judgment on his part, will not support a charge of reckless homicide.' " *Whitaker*, 778 N.E.2d at 425 (quoting *Beeman v. State*, 232 Ind. 683, 690, 115 N.E.2d 919, 922 (1953)). Compiling and reviewing a number of Indiana cases that had addressed reckless homicide convictions following automobile accidents, we derived the following general principles:

[R]elatively slight deviations from the traffic code, even if they technically rise to the level of "reckless driving," do not necessarily support a reckless homicide conviction if someone is subsequently killed. Some gross deviations from the traffic code, however, may under certain circumstances be such a substantial departure from acceptable standards of conduct that they will support a reckless homicide conviction, such as ignoring traffic signals at a high rate of speed, driving on a dark road at night without headlights, or intentionally crossing the centerline without a legitimate reason for doing so. Speed may support a reckless homicide conviction, but only

greatly excessive speeds, such as twenty or more miles per hour over the posted speed limit, or where inclement weather and poor road conditions render higher speeds greatly unreasonable.

*Id.* at 426. Under these guidelines, we concluded that the evidence in the case of "non-excessive speeding and some inconclusive indication of failing to maintain a proper interval" was insufficient to sustain the truck driver's reckless homicide conviction. *Id.* at 428.

In *Boadi*, a semi-truck driver drove through a red light at fifteen miles per hour under the posted speed limit, striking another vehicle that had entered the intersection from the other direction and killing its driver. The light for the other direction had just turned green, and although there was no evidence the truck driver had attempted to brake heavily before entering the intersection nor that he had sounded his horn, neither was there any evidence that the truck driver had "charged the light." The State charged the truck driver with various crimes, including reckless homicide and criminal recklessness. After the State's presentation of evidence at trial, the trial court granted the truck driver's motion for a directed verdict.

On appeal, we affirmed that ruling. We noted that there was no evidence that the truck driver was under the influence of alcohol or drugs, that he had otherwise been driving erratically, that he was overly fatigued, that he was failing to comply with trucking regulations, or that he had accelerated through the red light. In the absence of any circumstances such as these, we held that the failure to stop at a light was not evidence of a substantial departure from "acceptable standards of conduct sufficient to serve as evidence of recklessness." *Boadi*, 905 N.E.2d at 1075. Thus, we concluded the trial court had properly

concluded there was a complete lack of evidence to support the reckless homicide and other recklessness-related charges against the truck driver. *Id.*

■ There is one key difference between cases such as *Whitaker* and *Boadi* and this case: Hurt was not convicted of reckless homicide, or even criminal recklessness for that matter. Instead, he was convicted of reckless disregard of a traffic control device in a highway workzone, resulting in death. Indiana Code Section 35–42–1–5 provides, "A person who recklessly kills another human being commits reckless homicide. . . ." "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. § 35–41–2–2(c). The specific harm that a defendant convicted of reckless homicide must have plainly, consciously, and unjustifiably disregarded by their conduct is the risk of death of another person. Under the reckless homicide statute as currently written, the State faces a significant burden in proving that an automobile accident resulting in death was the result of a driver's reckless disregard of the risk of death by their conduct. As we noted in *Whitaker*, a defendant could be guilty of reckless driving, but still not be guilt of reckless homicide if a death results, if the defendant lacked the requisite mens rea for that death. *Whitaker*, 778 N.E.2d at 426; *see also Seibert v. State*, 239 Ind. 283, 285–86, 156 N.E.2d 878, 879 (1959).

Here, by contrast, we need not decide whether Hurt could have been convicted of reckless homicide. In other words, the State here did not have to prove that Hurt plainly, consciously, and unjustifiably disregarded the fact that his driving could lead to someone's death. Rather, the

State only had to prove that he recklessly disregarded a traffic control device or devices, and that the disregard caused a death. In that respect, Indiana Code Section 9–21–8–56 closely resembles the Indiana statute criminalizing operating a vehicle while intoxicated ("OWI") resulting in death that we analyzed in *Kelly v. State*, 527 N.E.2d 1148 (Ind.Ct.App.1988), *sum. aff'd*, 539 N.E.2d 25 (Ind.1989). When *Kelly* was decided, there was one OWI statute that criminalized the base offense of OWI without any resulting harm, and elevated the penalty if bodily injury resulted, and further elevated the penalty if death resulted.[1] *See Mathews v. State*, 849 N.E.2d 578, 584 (Ind.2006). OWI resulting in death does not require any mens rea with respect to the death. *See Smith v. State*, 496 N.E.2d 778, 782 (Ind.Ct.App. 1986), *trans. denied*.

Here, similarly, Indiana Code Section 9–21–8–56(e) creates the base offense of Class A misdemeanor reckless failure to obey a traffic control device in a highway workzone, which is elevated to a Class C felony if death results. As with the OWI statute, we conclude the State only was required to establish Hurt's reckless disregard of a traffic control device or devices, and that such disregard was a proximate cause of Shepherdson's death. *See Abney v. State*, 766 N.E.2d 1175, 1177–78 (Ind. 2002) (holding that in OWI resulting in death case, State must prove defendant's conduct was a proximate cause of the victim's death). Additionally, the State did not have to prove any mens rea on Hurt's part with respect to Shepherdson's death.

Bearing that in mind, we conclude there is sufficient evidence to support Hurt's conviction. The fact that there was construction work being done on I–164, which required closure of the right or driving lane, was well-advertised by numerous signs, well in advance of the actual worksite. In fact, Hurt had already driven through that stretch of I–164 on several occasions that day, so the fact of a lane closure on the highway should not have been a surprise. The weather conditions were ideal. Shepherdson's arrow board truck was deliberately placed by an INDOT supervisor so that it would be clearly visible for a considerable distance to anyone descending from the Lloyd Expressway bridge. Nonetheless, Hurt made no attempt to merge into the left lane, even though Webb had done so and observed no reason why Hurt could not have done so. Rather, Hurt drove straight into the back of Shepherdson's truck, and there is no indication that Hurt made any attempt to brake before doing so. All of this evidence put together was sufficient for a reasonable jury to conclude that Hurt recklessly disregarded multiple traffic control devices, and most crucially, the traffic control device attached to the back of Shepherdson's truck. And, it is evident that Hurt's conduct in crashing into Shepherdson's truck was a proximate cause of his death.

Hurt also contends that INDOT was, essentially, contributorily at fault for Shepherdson's death because INDOT supervisors did not follow every rule for workzone signage to the letter as contained in an INDOT manual, or because the workzone signs were too far away from the actual workzone on Morgan Avenue bridge. We note that contributory negligence is no defense to a criminal prosecution. *Pollard v. State*, 439 N.E.2d 177, 187 (Ind.Ct.App. 1982) *disapproved of on other ground by Powell v. State*, 644 N.E.2d 855 (Ind.1994). Moreover, whether the signage was ade-

---

1. OWI resulting in death now is governed by a statute separate from the base OWI statute. *See* I.C. § 9–30–5–5.

quate to warn Hurt of the upcoming workzone was, we believe, a question for the jury to consider. It clearly believed the signage was adequate, which is evidenced in part by Webb's merger into the left or passing lane well in advance of the Morgan Avenue bridge, even though he was not yet able to see Shepherdson's truck. We will not reweigh the evidence or second guess that determination, and there is sufficient to support Hurt's conviction.

## Conclusion

There is sufficient evidence to support Hurt's conviction for Class C felony reckless disregard of a traffic control device in a highway workzone resulting in death. We reverse Hurt's conviction for Class C felony reckless operation of a vehicle in a highway workzone resulting in death on double jeopardy grounds.

Affirmed in part and reversed in part.

BAKER, J., and VAIDIK, J., concur.