

IN THE

# Court of Appeals of Indiana

Sobirjon Rakhimov,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Apr 29 2025, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

April 29, 2025

Court of Appeals Case No.
24A-CR-2172

Appeal from the Whitley Circuit Court

The Honorable Matthew J. Rentschler, Judge

Trial Court Cause No.
92C01-2309-F5-1029

**Opinion by Chief Judge Altice**
Judges Kenworthy and Scheele concur.

**Altice, Chief Judge.**

## Case Summary

Sobirjon Rakhimov drove his commercial motor vehicle into a passenger car, killing both of its occupants. Following a jury trial, he was convicted of two counts of reckless homicide, a Level 5 felony. On appeal, he presents the following restated issues for our review:

> (1) Did the State present sufficient evidence to support the convictions?
>
> (2) Did the trial court abuse its discretion when it refused three final jury instructions proffered by Rakhimov?

We affirm.

## Facts & Procedural History[1]

Around 5:00 p.m. on March 1, 2023, Jerome Wait was driving eastbound on U.S. 30 in Whitley County, and his wife Terri was in the front passenger seat of their sedan. Rakhimov was directly behind them in his commercial motor vehicle, a semi-trailer truck, driving a load from Chicago to Newark. As they neared the "very busy intersection" of U.S. 30 and West Lincolnway controlled by a traffic light, Jerome applied his brakes. *Transcript* at 27. Rakhimov then drove directly into the Waits' vehicle and pushed it nearly 150 feet from the

---

[1] Oral argument was held on April 10, 2025, at South Adams High School in Berne, Indiana. We thank the faculty, students, community leaders, and members of the local bar for the warm welcome. We also appreciate counsel traveling to this argument so that the students could witness their skillful advocacy.

point of impact and into a guardrail. The vehicle was severely crushed. Terri died at the scene, and Jerome died after being airlifted to the hospital.

[4] Deputy Robert Sands of the Whitley County Sheriff's Department spoke with Rakhimov at the scene. Rakhimov told Deputy Sands that he had looked at his GPS and when he looked up, "he saw the vehicle in front of him breaking [sic]" and "was unable to avoid hitting the vehicle." *Id*. at 35.

[5] Indiana State Police (ISP) Detective Marc Leatherman, a qualified accident reconstructionist, determined that Rakhimov had not applied his brakes before impact and then did not reach "maximum brake [] application" until "he had driven completely through where [the] car had been sitting." *Id*. at 94. Detective Leatherman estimated that Rakhimov was traveling between fifty-one and fifty-nine miles per hour when he struck the Waits' vehicle.

[6] Subsequent investigation by Detective Leatherman and ISP Trooper Eric Egbert, a motor carrier inspector, suggested that Rakhimov had falsified his electronic driving logs to indicate that he had been sleeping when he was actually driving.[2] Relevant here, Rakhimov had manually entered on his logs that he had been in his sleeper berth on February 28 from midnight to 10:45

---

[2] Trooper Egbert reviewed Rakhimov's logs, which were downloaded at the scene, and then spoke with him the next day at a hotel. Rakhimov reported that his logs were correct, that he did not have a co-driver, and that he had not experienced issues with his computer logging system. When Trooper Egbert then asked where he had slept before the accident, Rakhimov expressed difficulty remembering. Once Trooper Egbert began asking about inconsistencies in the logs and whether Rakhimov had been driving rather than sleeping, Rakhimov became quiet and expressed confusion and asked for an interpreter. The interview ended after about fifteen minutes, when Rakhimov had to leave.

a.m. and then again on March 1 from 2:14 a.m. to 3:49 p.m. But the data obtained from his truck's engine control module, which Rakhimov could not manipulate, showed that he was actually driving during the vast majority of this time:



*Exhibits Volume* at 79 (a snapshot for these dates from State's Exhibit 28, which reflected the truck's daily engine usage).

[7] At Rakhimov's jury trial, Trooper Egbert detailed the hours-of-service regulations under the Federal Motor Carrier Safety Act that limit how long commercial drivers such as Rakhimov can legally drive. He explained that after ten consecutive hours off duty, drivers may be on duty for fourteen hours. Of those fourteen hours, only eleven hours can be driving hours, with the other hours made up of such things as paperwork, fueling, and loading. Drivers are also required by law to keep and certify their driving logs.

[8] Based on the data from the engine control module and other evidence from the scene, Detective Leatherman opined that Rakhimov failed to react to the car

stopped in front of him because "he was either distracted or drowsy driving." *Transcript* at 109. And he indicated that distracted and drowsy driving "[a]bsolutely" compound one another. *Id.* Detective Leatherman also testified that Rakhimov was "well in excess" of the fourteen-hour limitation and that he believed, based on the driving data, that Rakhimov was "too fatigue[d] to be driving" at the time of the accident. *Id.* at 109, 112. He acknowledged, however, on cross examination that even if Rakhimov had not been "drowsy driving, there is still always the possibility that this crash would have occurred because we don't know exactly what was going on inside the cab of his vehicle at the time of the crash." *Id.* at 114.

[9] Trooper Egbert testified that the purpose of the federal safety regulations is to help prevent "impaired and drowsy and fatigue[d] drivers from operating motor vehicles[.]" *Id.* at 124. According to Trooper Egbert, Rakhimov became in violation of the hours-of-service limitations around 4:30 a.m. on February 28 but did not take the required ten-hour break. Instead, Rakhimov "continue[d] to drive" over the next thirty-six hours when he was not legally permitted to do so under the regulations. *Id.* at 122.

[10] Rakhimov did not testify at trial. The theory of his defense, as reflected in his counsel's closing arugment, was that the State did not present any actual evidence of fatigue and that the State's "entire case rests on data." *Id.* at 152. Further, noting Rakhimov's statement at the scene that he had looked at his GPS, defense counsel argued that "[i]nadvertence is not enough to convict someone in this situation." *Id.* at 154; *see also id.* at 155 ("Inadvertence is not a

crime. You may say its [sic] negligence, but negligence is a civil matter, it deals with money. We're talking about a criminal matter.").

[11] After about an hour of deliberations, the jury found Rakhimov guilty of two counts of Level 5 felony reckless homicide. The trial court subsequently sentenced him on August 26, 2024, to concurrent terms of three years in prison.

[12] Rakhimov now appeals. Additional information will be provided below as needed.

## Discussion

### 1. The State presented sufficient evidence that Rakhimov acted recklessly.

[13] Rakhimov contends that that the State failed to present sufficient evidence to show that he acted recklessly. Our standard of review on a claim of insufficient evidence is well settled:

> For a sufficiency of the evidence claim, we look only at the probative evidence and reasonable inferences supporting the verdict. We do not assess the credibility of witnesses or reweigh the evidence. We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017) (citations omitted); *see also Gibson v. State*, 51 N.E.3d 204, 210 (Ind. 2016) ("We will affirm the judgment if it is supported by substantial evidence of probative value even if there is some conflict in that evidence.").

[14] Reckless homicide is defined in Ind. Code § 35-42-1-5 as follows: "A person who recklessly kills another human being commits reckless homicide, a Level 5 felony." A person acts recklessly "if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c).

[15] Indiana appellate courts have frequently addressed the evidence necessary to establish the mens rea for a reckless homicide conviction arising out of a motor vehicle collision. The following general principles have been repeated often in the sufficiency context:

> "Proof that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtfulness [sic[3]]of the driver of a vehicle, or from an error of judgment on his part, will not support a charge of reckless homicide." *Beeman v. State*, 232 Ind. 683, 690, 115 N.E.2d 919, 922 (1953).
>
> ***
>
> [R]elatively slight deviations from the traffic code, even if they technically rise to the level of "reckless driving," do not necessarily support a reckless homicide conviction if someone is subsequently killed. Some gross deviations from the traffic code, however, may under certain circumstances be such a substantial departure from acceptable standards of conduct that they will support a reckless homicide conviction, such as ignoring traffic signals at a high rate of speed, driving on a dark road at night

---

[3] *Beeman* says "thoughtlessness" not "thoughtfulness."

without headlights, or intentionally crossing the centerline without a legitimate reason for doing so.

*Whitaker v. State*, 778 N.E.2d 423, 425-26 (Ind. Ct. App. 2002) (considering a collection of cases in which a reckless homicide conviction arising out of motor vehicle collision was reviewed for sufficiency of the evidence), *trans. denied*; *see also State v. Boadi*, 905 N.E.2d 1069, 1072 (Ind. Ct. App. 2009); *Dylak v. State*, 850 N.E.2d 401, 408-09 (Ind. Ct. App. 2006), *trans. denied*. Further, we have observed that it has long been the public policy in Indiana that "automobile accident deaths caused by negligence, even gross negligence, fall outside the realm of criminal prosecution, and that the mere violation of a traffic law as a cause of a collision will not automatically raise the death to the level of a homicide." *Whitaker*, 778 N.E.2d at 428.

[16] In *Whitaker*, this court reversed a reckless homicide conviction on sufficiency grounds where the defendant, a well-rested tanker truck driver,[4] failed to stop in time to avoid colliding with the car in front of him, which had signaled and started braking to make a left turn. The defendant was driving about five miles per hour over the speed limit and did not apply his brakes or otherwise attempt to avoid the car until almost the precise moment that he struck it.

---

[4] The collision occurred in the morning, about an hour after the defendant had started driving that day having slept in his cab through the night.

In reversing, we observed that the defendant's failure to notice the car stopping in front of him was itself simply "evidence of inadvertence or lack of attention; in other words, negligence, not recklessness." *Id*. And we expressly noted that this case involved "a non-intoxicated, well-rested truck driver who drove slightly above the speed limit and arguably followed too closely behind another vehicle on a clear, dry day, with undeniably tragic results." *Id*. Such evidence was "insufficient to establish guilt of reckless homicide beyond a reasonable doubt for a death resulting from a motor vehicle collision." *Id*.

Similarly, in *Boadi*, this court held that the State "failed to introduce evidence of more than inadvertence or an error of judgment" regarding a semi-truck driver's failure to stop at the red light. *Boadi*, 905 N.E.2d at 1070. The evidence showed that the defendant failed to stop at the red light before entering the intersection even though he had sufficient time to stop. But this court noted that there was no evidence that he accelerated to beat the light (in fact, he was traveling under the speed limit), that he was driving erratically or under the influence of alcohol or drugs, or that he was "fatigued or in any way failing to comply with trucking regulations." *Id*. at 1075. Ultimately, we held that "the failure to stop at a red light due to inadvertence or an error of judgment, without more, does not constitute recklessness as a matter of law." *Id*.

The *Boadi* court distinguished the *Dylak* case, explaining:

> The State is correct that there are similarities between the two cases: both semi-truck drivers were approaching a visible intersection, both had enough distance to stop before entering,

and both failed to stop before the light turned red. **However, Dylak had violated rules regarding how many hours a driver may drive during an eight-day period and how many hours a driver may drive at one time before resting for a minimum eight-hour period**. Dylak also admitted to officers responding to the scene of the collision that he was fatigued. Dylak was convicted of reckless homicide, and this Court affirmed the conviction on appeal. However, there is no such evidence of fatigue or rule violations in Boadi's case. We find *Dylak* distinguishable on this ground.

*Boadi*, 905 N.E.2d at 1075 (emphasis supplied and citations omitted).

[20] In affirming the reckless homicide conviction, the *Dylak* court concluded that there was sufficient evidence that the driver was "substantially deviating from acceptable driving standard" under the following circumstances:

Dylak violated the rule that during a period of eight days a driver may not exceed seventy hours of on duty time. During the eight days preceding the [May 13] collision, Dylak had been driving for approximately 71.5 hours at the time of the collision. On May 7th, 8th, and 12th, Dylak also violated the rule that a driver may only drive ten hours and then must not work for eight hours. **The purpose of the seventy hour rule and the ten hour rule is to prevent fatigued drivers from driving on the roadways.**

Dylak entered the well-lit intersection of U.S. 30 and Center Street. Dylak had enough distance to stop. The collision occurred 11.04 seconds after the traffic signal controlling eastbound traffic on U.S. 30 turned yellow. Dylak admitted that he was one hundred yards away from the intersection when the traffic signal turned yellow and that the traffic signal was red when he entered the intersection. Dylak failed to use his horn as he entered the

intersection. After the collision, Dylak told officers that he was
tired and that he was going to rest.

*Dylak*, 850 N.E.2d at 409 (emphasis supplied).

[21] Rakhimov attempts to distinguish the facts of this case from *Dylak*. He acknowledges that *Dylak* also involved a semi-truck driver who was in violation of the hours-of-service regulations that limited daily driving. But Rakhimov argues that the "critical distinction" is that the driver in *Dylak* told police that he was tired and was going to rest after the collision. *Appellant's Brief* at 14. Here, Rakhimov did not tell anyone at the scene that he was tired, and he argues that the State "failed to present any evidence that Rakhimov was tired when he drove that day." *Id*. at 15. Relying on his statement at the scene that he was looking at his GPS just before the collision, Rakhimov asserts: "Even though it is true that Rakhimov was driving in violation of the hours-of-service regulations, that was not the reason for the collision." *Id*. He argues that his inattention (i.e. looking at the GPS) was, at most, gross negligence, not recklessness.

[22] We agree with the State, however, that Rakhimov's arguments ignore the evidence most favorable to the verdict, from which the jury could reasonably infer that he was both drowsy and distracted while driving. As Trooper Egbert testified, the purpose of the hours-of-service regulations on commercial vehicles is to prevent impaired, drowsy, and fatigued drivers from operating on our roadways. Rakhimov falsified his driving logs on February 28 and March 1, reporting that he was in his sleeper berth when he was actually driving for

lengthy periods, and he drove "well in excess of" the driving limits. *Transcript* at 109. Specifically, based on evidence from the engine control module, Rakhimov needed to take a ten-hour break beginning around 4:30 a.m. on February 28. Instead, he continued working through the time of the accident, about thirty-six hours later, taking only a few short breaks. Despite being in violation of the regulations, he accrued about fifteen additional hours of driving on February 28 and nearly eleven hours on March 1. This was a gross deviation from the safety-minded hours-of-service regulations, and Rakhimov knew as much, as evidenced by his falsifying of his logs.

[23] Detective Leatherman opined at trial that the accident was caused because Rakhimov was distracted or drowsy driving, which effects are compounded when combined. Detective Leatherman also testified, based on the driving data, that he believed Rakhimov was too fatigued to be driving.

[24] Further, Rakhimov's slow reaction time is evidenced by the details of the crash itself. Rakhimov acknowledged at the scene that after looking at his GPS, he looked up and saw the brake lights of the Waits' car. Yet the facts show that Rakhimov did not apply the truck's brakes until he had collided with the car and then only reached maximum brake application after he had "driven completely through" it. *Transcript* at 94. Under the facts, the jury could reasonably infer that Rakhimov reacted slowly because he was drowsy and distracted as he approached the very busy intersection.

The State presented ample evidence that Rakhimov, like the driver in *Dylak*, acted recklessly. That is, in plain, conscious, and unjustifiable disregard of the risk that he might kill someone, he chose to violate the federal safety regulations for commercial drivers and drive his truck in a fatigued and distracted state, looking at his GPS as he approached a very busy intersection at over fifty miles per hour. His actions deviated substantially from acceptable standards of conduct and went well beyond simple inattention or an error in judgment. Accordingly, his sufficiency argument fails.

## 2. The trial court did not abuse its discretion by refusing to give Rakhimov's tendered jury instructions.

Rakhimov argues that the trial court erred in declining to give three proposed jury instructions. We review a trial court's decision to refuse a tendered jury instruction for an abuse of discretion. *New v. State*, 135 N.E.3d 619, 622 (Ind. Ct. App. 2019). Such review includes a consideration of whether: (1) the tendered instruction correctly states the law; (2) there was evidence presented at trial to support giving the instruction; and (3) the substance of the instruction was covered by other instructions that were given. *Id.* "A trial court acts within its discretion if it denies a request that would likely confuse the jury." *Owen v. State*, 210 N.E.3d 256, 268 (Ind. 2023).

The trial court's instructions made clear that to find Rakhimov guilty of reckless homicide, the jury had to find beyond a reasonable doubt that he acted recklessly. While the jury was properly instructed on the statutory definition of recklessness, Rakhimov contends that it also should have been instructed on

"the distinction between negligence and recklessness." *Appellant's Brief* at 11. In this vein, Rakhimov tendered three instructions at the close of the evidence. The first proposed final jury instruction (Instruction #1) provided:

> Evidence that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtfulness [sic] of the driver of a vehicle, or from an error of judgment on his part, will not support a conviction of reckless homicide.

*Appendix* at 59. The second (Instruction #2) provided:

> Automobile accident deaths caused by negligence, even gross negligence, fall outside the realm of criminal prosecution, and that the mere violation of a traffic law as a cause of a collision will not automatically raise the death to the level of homicide.

*Id.* at 61. The third (Instruction #3) provided:

> In order to sustain a conviction for Reckless Homicide the State of Indiana must prove that the defendant has manifestly disregarded the warning of impending sleep to such a degree that his conduct typifies either intentional injury or a conscious defiance of the probable result.

*Id.* at 63. Rakhimov directed the trial court to *Whitaker* as authority for Instructions #1 and #2 and *T.J.C. v. State*, 829 N.E.2d 203 (Ind. Ct. App. 2005), *trans. denied*, as authority for Instruction #3.[5]

---

[5] We note that Rakhimov does not discuss or cite *T.J.C.* on appeal.

[28] After hearing arguments and taking the matter under advisement, the trial court rejected the proposed instructions. When addressing the instructions on the merits,[6] the trial court stated that the instructions would not be helpful to the jury and would cause confusion, as negligence is a "very civil concept." *Transcript* at 140. The court also believed that the cases cited as authority for the instructions were "very factually distinguishable" from this case. *Id*.

[29] Rakhimov presents a rather brief argument on appeal regarding the instructions and, notably, does not separately discuss the three rejected instructions. He simply argues that the jury should have been instructed on the distinction between negligence and recklessness.

[30] As to whether the instructions were a correct statement of the law, there is no dispute here that the language used in the proposed instructions came directly from appellate cases addressing the sufficiency of the evidence. However, the mere fact that certain language or expression is used in appellate opinions to reach a conclusion does not make it proper language for instructions to a jury. *See Keller v. State*, 47 N.E.3d 1205, 1209 (Ind. 2016). "Appellate review of the sufficiency of the evidence … will rarely, if ever, be an appropriate basis for a

---

[6] As another basis for rejecting the instructions, the trial court found that they were untimely submitted. The State conceded at oral argument that this was erroneous. Indeed, Ind. Trial Rule 51(C) provides: "At the close of the evidence and before argument each party may file written requests that the court instruct the jury on the law as set forth in the requests." The pretrial deadline imposed by the trial court was inconsistent with this rule. *See Snell v. State*, 866 N.E.2d 392, 401 (Ind. Ct. App. 2007) (holding that instruction was improperly rejected as untimely where local rule was "incompatible with Trial Rule 51 in that it impermissibly constrain[ed] the tender of jury instructions to submission prior to the day of trial").

jury instruction, because the determination is fundamentally different." *Id*. (cleaned up).

[31] With respect to whether there was evidence in the record to support giving the instructions, Rakhimov argues the State failed to present any evidence that he was fatigued while driving, "leaving the jury with the question of whether Rakhimov looking at his GPS device constituted reckless conduct." *Id*. at 18. We fail to see how this argument has anything to do with Instruction #2's "the mere violation of a traffic law" language or Instruction #3's "impending sleep" language. And Rakhimov appears to focus only on Instruction #1 when he asserts that Indiana appellate courts have held that refusing to give "a nearly identical instruction" in a reckless homicide trial was reversible error. *Id*. at 19 (citing *Cichos v. State*, 184 N.E.2d 1 (Ind. 1962) and *Sipp v. State*, 514 N.E.2d 330 (Ind. Ct. App. 1987)).

[32] In *Cichos*, the appellant was convicted of reckless homicide following an accident in which his car hit another car head-on. The trial court refused to give instructions (including one nearly identical to Instruction #1) addressing the well-established law in Indiana that "mere negligent operation of a motor vehicle does not render one so operating it criminally liable, should a death ensue." *Cichos*, 184 N.E.2d at 3. Our Supreme Court determined that failure to give the instructions amounted to reversible error and stated:

> Whether the evidence in this case establishes that the deaths alleged in the indictment occurred from a mere accident, from negligent conduct or from willful and/or wanton misconduct so

as to amount to recklessness, is dependent on the weight given the various aspects of the case and the evidence by the jury. The very purpose of the jury is to determine, after deliberation and pursuant to the court's instructions, the legal category into which the jury feels the defendant's conduct falls. The appellant's theory of the evidence and the law establishing such theory was never given to the jury in any instructions.

*Id.*

[33] In *Sipp*, the defendant, driving his car over fifty miles per hour, side-swiped two cars stopped at a traffic light before hitting a third car, killing that driver. The defendant, who suffered from epileptic seizures, testified that he did not remember the accident but believed that he had a seizure at the time. This court reversed the reckless homicide conviction based on the trial court's failure to give tendered instructions like those in *Cichos*. *Sipp*, 514 N.E.2d at 332.

[34] Rakhimov also directs us to *New*, where this court reversed a conviction for criminal recklessness based on the trial court's refusal to instruct on the distinction between negligence and recklessness. There, the defendant had backed up her car and bumped into her aunt, with whom she had just been engaged in an altercation. In reversing, this court explained:

> We are convinced that this is a case where there is a legal question of negligence at stake, as New was engaged in conduct that can be undertaken with due care, namely operating a motor vehicle. The main theory of New's defense was that she backed her vehicle into Barbara completely on accident. It is well settled that "[a] criminal defendant is entitled to have a jury instruction on 'any theory or defense which has some foundation in the

evidence.'" *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015) (quoting *Toops v. State*, 643 N.E.2d 387, 389 (Ind. Ct. App. 1994)). New's claim that she was only negligent was at least a theory, with some foundation in the evidence, that could have led to her acquittal, and therefore she was entitled to have a jury instruction explaining that theory.

*New*, 135 N.E.3d at 624.

[35] The State acknowledges *Cichos*, *Sipp*, and *New*, but argues that this case is more like *Springer v. State*, 798 N.E.2d 431 (Ind. 2003). The defendant in *Springer* went to the home of another with an unlicensed gun and then loaded and cocked it before banging on the door. Once he gained entry, with several occupants inside, the defendant demanded to know the whereabouts of a particular individual, whom he believed had beaten his son the night before. During his search, the defendant's gun discharged, and the bullet struck an individual through a wall in another room. The defendant claimed that he accidentally fired the gun when he stumbled while opening the basement door.

[36] The Supreme Court upheld Springer's conviction for criminal recklessness despite the trial court's rejection of instructions addressing the distinction between negligence and recklessness. The Court held that while Springer was free to argue to the jury, as he did, that his actions were merely negligent, he was not entitled to a negligence instruction. The Court explained:

> Negligence, as used by Defendant here, is an argument not a legal defense. Defendant's legal defense was and is that he is not guilty of criminal recklessness because his actions did not meet the legal requirements of recklessness. The jury was properly

instructed [on the definition of recklessness and the State's burden].… Defendant's negligence argument is simply a statement that [the] State failed to prove that he was reckless. No additional instruction to the jury on this point was required.

[Further,] no reasonable interpretation of the facts suggests that Defendant's conduct was merely negligent, that he merely failed to exercise reasonable or ordinary care. As Judge Bailey pointed out [in his dissent], "there is no definition of reasonable and ordinary care that encompasses the circumstance of an uninvited person seeking confrontation in the occupied residence of another person, while wielding a loaded, cocked weapon without the safety mechanism engaged." From the very beginning, Defendant engaged in conduct in which he had no right to engage and which, when viewed in its best light, indicates an intent to intimidate.…

While the jury had the responsibility of determining whether Defendant's conduct was reckless, there was no legal question of negligence at stake. In this respect, the factual circumstances of this case distinguish it from *Cichos* and *Sipp*. Both of those cases involved conduct that can be undertaken with due care – the conduct of driving a motor vehicle.

*Id*. at 435-36 (citations omitted).

[37]     Recently, this court has rejected the notion that negligence instructions are always warranted in a reckless homicide case involving an automobile accident; "the evidence in any given case must still support the giving of the instruction." *Shepherd v. State*, 155 N.E.3d 1227, 1239 (Ind. Ct. App. 2020) (finding no abuse of discretion in trial court's decision not to give negligence instruction (similar to Instruction #1) in reckless homicide case involving a motor vehicle accident where evidence did not support it), *trans. denied; see also Weaver v. State*, No.

24A-CR-766, slip op. at 18 (Ind. Ct. App. April 10, 2025) ("We cannot say that gross deviations of the traffic code are the type of conduct that may be undertaken with due care. As such, based on the constellation of facts before the trial court, including Weaver's act of driving erratically at a high rate of speed towards an intersection with stopped traffic, we cannot say that the trial court abused its discretion in rejecting Weaver's request to instruct the jury on negligence.").

[38] In this case, we find particularly relevant that, unlike the defendants in *Cichos*, *Sipp*, and *New*, Rakhimov was not driving a passenger car. He was a commercial truck driver behind the wheel of a semi-trailer truck weighing at least 42,000 pounds. Rakhimov far exceeded the driving limits imposed by the federal safety regulations, which are intended to prevent fatigued truckers from driving on the roadways. That is, he continued driving about 36 hours beyond the point where he was required to take a consecutive 10-hour break. Coupled with this gross deviation from the safety regulations, resulting in expected fatigue, Rakhimov looked away from the road as he approached a very busy intersection traveling over 50 miles per hour.

[39] We agree with the State that *Springer* is applicable here, as no reasonable interpretation of the facts suggests that Rakhimov's conduct was merely negligent. Under the circumstances, Rakhimov could not undertake his conduct with due care. Thus, while Rakhimov was free to, and did, argue to the jury that he acted only negligently, we cannot say that the trial court abused its discretion by refusing any of the jury instructions proposed by Rakhimov. *See*

*Springer*, 798 N.E.2d at 435 ("Negligence, as used by Defendant here, is an argument not a legal defense.").

[40] Judgment affirmed.

Kenworthy, J. and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Jesse R. Drum
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana