Michael E. GIBBS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A02–9603–CR–155.

Court of Appeals of Indiana.

March 21, 1997.

Transfer Denied May 22, 1997.

Steven Knecht, Vonderheide & Knecht, P.C., Lafayette, for Appellant–Defendant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

FRIEDLANDER, Judge.

Following a bench trial, Michael E. Gibbs was convicted of Reckless Homicide,[1] a class C felony, for the death of John P. James, who was killed when the car he was driving collided with the car being driven by Gibbs.

The sole issue presented on appeal is whether sufficient evidence was presented to sustain Gibbs's conviction. Gibbs specifically claims that insufficient evidence was presented that (1) his conduct was reckless, (2) his actions were voluntary, and (3) his actions were the direct and proximate cause of the collision that resulted in James's death.

We affirm.

The facts most favorable to the judgment are that, on January 3, 1995, at approximately 5:15 a.m., Mark Hiatt, a truck driver for Wonder Bread, was driving on County Road 650 North in Lafayette. When he got to the intersection of County Road 650 North and State Road 43 and started turning south onto State Road 43, the headlights of his step van illuminated the road and he caught a glimpse of a dark-colored, older-model car traveling northbound on State Road 43 near the intersection of County Road 650 North at about fifty or fifty-five miles per hour. At the time, Hiatt was afraid that he might hit the car because it was barely visible. The car had no headlights; the front of the car had only two very dim lights that barely glowed. Hiatt estimated that the lights on the front of the car became visible to him when they were, at most, ten to fifteen feet away. After Hiatt pulled out onto State Road 43, he looked in his rear view mirror and observed that the car also had no taillights.

Phillip L. Brookbank testified that he was headed southbound on State Road 43 on January 3, 1995, at approximately 5:15 a.m. and that it was "pitch dark", *Record* at 101, outside. Brookbank let up on the gas pedal when he observed very faint lights moving toward him in the northbound lane. After the faint lights got within a distance approximately equal to a city block, Brookbank turned on his bright lights and could then discern that the faint lights were yellowish and very dim parking lights on a car that had no headlights. As that car passed him, Brookbank observed that it was a dark-colored, older car. Just then, Brookbank became aware of a car coming up from behind him and immediately heard a collision.

Tippecanoe County Deputy Sheriff Brad Bushman testified that he arrived at the crash scene at approximately 5:45 a.m. Bushman observed, among other things, a black 1978 Chevrolet Impala with extensive damage to the front of the car. Bushman checked the headlight switch on the Impala and found that it had been pulled out only one notch, which indicated that the parking lights had been on, but not the headlights.

Lieutenant Mark Kirby of the Tippecanoe County Sheriff's Department testified that, when he arrived at the crash scene at approximately 6:00 a.m., he observed Gibbs's Impala on the east side of the road, and James's Mitsubishi down an embankment on the west side of the road. According to Kirby, the Mitsubishi was traveling southbound in the northbound lane at the point of impact with the Impala.

Kirby found no alternator drive belt on the Impala, and its headlights showed evidence of "cold shock," which indicated that they were not illuminated at the time of the crash. He also observed evidence of "hot shock" in the Impala's parking lights, which indicated that those lights were on at the time of the crash.

Roger Barrette, a consultant in traffic accident investigation and reconstruction, testified that he examined the headlights from the Impala and found no "hot shock" and no other evidence which would indicate that the headlights were on at the time of impact. He observed a small amount of "hot shock" in the parking lights, which suggested that they were very dim at the time of impact.

1. Ind.Code Ann. § 35–42–1–5 (West 1986).

The State introduced at trial a transcript of an interview during which Gibbs told an insurance claims representative that, when he left home on the morning of the collision, the headlights on his car were on. During the interview, Gibbs stated in pertinent part:

> I had all lights. I come off of 65 onto 43 and I heard something click. Well, then my generator light come on. So I put, told Roger, I said I think I busted an alternator belt. So here we are with, we got going down the road and I said, Roger, I said, we're losing headlights. They're getting dim. About that time, Roger looked up and says watch it. He says, somebody's trying, some idiot's trying to pass somebody else.

*Record* at 317.

Roger East, who was in the car with Gibbs at the time of the crash, testified at trial on Gibbs's behalf. East testified that he and Gibbs were on their way to work at the time of the crash. East testified that, before the two reached State Road 43 on the morning of the crash, Gibbs told him that the alternator belt on his car was "about ready to go." *Record* at 360.

East claimed that, at the intersection of County Road 800 North and State Road 43, approximately one-half mile before the site of the accident, he and Gibbs noticed that the car lights were getting dim. At that point, East suggested that they continue driving to Brookston, which was about four miles away, where they could park the car at a Family Pantry and obtain a ride to work from one of several co-workers who always stopped there for coffee before work. East admitted at trial that he had told a police officer that they were trying to make it to work because, if they did not make it, they would lose their holiday pay.

East did not consider it dangerous to continue driving because, even with the dim lights on the car, he could still see approximately one hundred feet down the road. In addition, East claimed that his car had broken down once while he was on State Road 43, and while walking to the state police post, he almost got hit by three cars.

Gibbs testified on his own behalf and claimed that the first time he noticed that his headlights were becoming dim was when he was on State Road 43 approaching County Road 800 North. At that point, he slowed his car down to approximately forty-five to fifty-five miles per hour and moved the car toward the outside edge of the road. He claimed that he could then see approximately one hundred feet down the road. The next thing he saw was a car coming toward him and another one pull out around the first. He tried to get off the road, but was unable to do so quickly enough to avoid the collision.

Gibbs denied that he ever pushed the knob for the headlights in so that only the parking lights were on.

The standard of review in sufficiency cases is well settled. Without weighing the evidence or judging the credibility of witnesses, we look solely to the evidence most favorable to the judgment and all reasonable inferences drawn therefrom. *Coleman v. State,* 490 N.E.2d 711 (Ind.1986). A criminal conviction will be affirmed if there is evidence of probative value from which a trier of fact could reasonably infer that the defendant is guilty beyond a reasonable doubt. *Id.*

■ It is well established that every criminal conviction must be supported by evidence of each material element of the crime charged. *Thomas v. State,* 423 N.E.2d 682 (Ind.Ct.App.1981). "A person acts recklessly for purposes of reckless homicide if he engages in conduct in plain, conscious, and unjustifiable disregard of harm that might result and such conduct involves a substantial deviation from acceptable standards of conduct." *McClaskey v. State,* 540 N.E.2d 41, 45 (Ind.1989). *See also* Ind.Code Ann. § 35–41–2–2(c) (West 1986). Such conduct will support a reckless homicide conviction if it results in the death of another. IC § 35–42–1–5; *Warner v. State,* 577 N.E.2d 267 (Ind. Ct.App.1991).

■ "To sustain a conviction of Reckless Homicide, there must be evidence of probative value supporting each of three elements[:] causation, that the act resulting in the homicide was voluntary, and that the defendant's conduct was reckless and not

merely negligent." *Taylor v. State,* 457 N.E.2d 594, 597 n. 6 (Ind.Ct.App.1983).

### 1. Recklessness

The State presented sufficient evidence of recklessness to sustain Gibbs' conviction.

■ The evidence presented at trial established that Gibbs's actions were reckless and not merely negligent. When Gibbs chose to continue to operate his vehicle on a very dark highway during the early morning hours without headlights, he acted with a plain, conscious, and unjustifiable disregard of the harm that might result.

### 2. Voluntariness

■ We are unpersuaded by Gibbs's claim that insufficient evidence was presented that he voluntarily drove without headlights.

Gibbs testified at trial that (1) his headlights were functioning properly when he left home on the morning of the crash and when he picked up East at his home, (2) before he got to State Road 43 he had no indication of any problem with his alternator, and (3) he noticed a problem with his lights for the first time when they suddenly became dim as he was approaching County Road 800 shortly before the collision. He also testified that he had replaced the starter, alternator, and battery in his car within a few weeks before the crash.

Gibbs claims on appeal that, when the lights suddenly dimmed, he had only two choices: (1) to continue to drive to Brookston, or (2) to drive immediately into the field on the side of the road, park, and walk. He essentially contends that the second choice was unreasonable because it was cold, dark, and unsafe to walk on State Road 43 under these conditions. He claims that his situation may be contrasted with those in other cases where defendants made affirmative choices to drive recklessly. In effect, Gibbs is asking this court to reweigh the evidence on appeal. This we will not do.

Sufficient evidence of voluntariness was presented to sustain Gibbs's conviction.

### 3. Causation

■ Gibbs's claim that his conduct was not the direct and proximate cause of the victim's death is without merit.

In order to sustain its burden of establishing the causation element in homicide prosecutions, the State need only show that the defendant's conduct contributed mediately or immediately to the death of another person. In other words, the State must prove that the defendant's recklessness is the direct and proximate cause of the victim's death.

A finding of proximate cause embodies a value judgment as to the extent of the physical consequences of an action for which the actor should be held responsible. Accordingly, "proximate cause questions are often couched in terms of 'foreseeability;' an actor is not held responsible for consequences which are unforeseeable." It follows that, where an intervening cause is claimed as superseding the defendant's actions, the intervening cause must be unforeseeable to relieve the defendant of criminal liability.

*Warner,* 577 N.E.2d at 270 (citations omitted).

■ We are unpersuaded by Gibbs's claims that (1) because his vehicle had functional, operating parking lights at the time of the collision, it was unforeseeable that James would enter the northbound lane and attempt to pass another car, and (2) James's act of attempting to pass in such a situation was an intervening cause of the collision that superseded Gibbs's actions.

Judgment affirmed.

NAJAM, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The conduct of Gibbs at the time in question does not rise to the level of "recklessness" so as to justify a conviction of a Class C felony. In *Nordstrom v. State* (1994) Ind. App., 627 N.E.2d 1380, this court acknowledged that criminal recklessness must neces-

sarily be more egregious than an act of common law negligence.

"A person acts recklessly if he or she engages in conduct in plain, conscious, and unjustifiable disregard of harm that might result and such conduct involves a substantial deviation from acceptable standards of conduct." *Id.* at 1383 (citing *McClaskey v. State* (1989) Ind., 540 N.E.2d 41, 45).

With respect to this issue, the facts before us create a case of first impression, not heretofore decided either by the Indiana Supreme Court or by this court. Accordingly, it is appropriate to draw upon cases from other jurisdictions. Two such cases are *People v. Friesen* (1978) Ill.App., 58 Ill.App.3d 180, 15 Ill.Dec. 722, 374 N.E.2d 15, and *King v. Commonwealth* (1977) Va., 217 Va. 601, 231 S.E.2d 312. In *Friesen*, the defendant, as here, while driving his vehicle, began to experience difficulty with the amperage. He turned off the main headlights in order to conserve the battery but left the parking lights on. The residential area through which he was driving at approximately midnight, was unlighted, and there were no sidewalks. The vehicle struck and killed one of two pedestrians walking along the side of the road. The court reversed the reckless homicide conviction stating:

"In the instant case, the defendant was clearly negligent and it is possible that but for his negligence, Beth Douglas would still be alive.

Nonetheless, the gist of the offense in this case is not merely negligence.

. . . .

While the defendant must have realized that turning off the Jeep headlights created a risk, under the circumstances, the probability that turning off the headlights would lead to the Jeep hitting a pedestrian was insufficient to render the defendant's conduct 'an utter disregard of the safety of others under circumstances likely to cause injury.'" *Friesen, supra* at 185, 15 Ill. Dec. at 727, 374 N.E.2d at 19 (quoting *People v. Sikes* (1927), 328 Ill. 64, 74, 159 N.E. 293, 297).

In *King*, the conviction was for involuntary manslaughter which under state law was defined as "the killing of one accidentally, contrary to the intention of the parties, in the prosecution of some unlawful, but not felonious, act..." 231 S.E.2d at 315. The defendant was driving her vehicle northbound at approximately 11:30 PM with only the parking lights on. She struck broadside a vehicle which had been waiting to turn left, allowing other northbound vehicles to clear the intersection of the four-lane divided highway. Not seeing defendant's vehicle, the victim had turned in front of defendant. In reversing the conviction, the Virginia Supreme Court held:

"In the operation of motor vehicles violation of a safety statute amounting to mere negligence proximately causing an accidental death is not sufficient to support a conviction of involuntary manslaughter.

... Accordingly, we define involuntary manslaughter in the operation of a motor vehicle as the accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life." *King, supra*, 231 S.E.2d at 316.

The State relies here upon two other cases, *State v. Stottlemyre* (1988) Mo.App., 752 S.W.2d 840, and *State v. Mears* (1984) La. App., 445 So.2d 167. Those cases, however, are clearly distinguishable in that there were other culpable acts of the defendant in addition to driving without headlights. In *Stottlemyre*, the defendant was operating his motorcycle at a high rate of speed on the wrong side of the road, lost control and struck a guardrail killing his passenger. In *Mears*, the defendant knew he had no headlights before he began to drive the vehicle and, in addition, was intoxicated. In my view, these cases do not lead to the conclusion that Gibbs' conduct was criminally reckless, given the Indiana definition of recklessness.

An additional factor militates in favor of reversal. Violation of I.C. 9–21–7–2, Indiana's statute requiring the display of headlights at certain times of the day and under certain conditions, is only a Class C infraction. Significantly, I.C. 9–21–8–52

which sets forth various acts constituting reckless driving categorizes those acts of recklessness as more serious Class B misdemeanors. A logical analysis of the two statutes would lead one to conclude that our legislature did not contemplate that operating a vehicle with only parking lights displayed would constitute criminal recklessness.

For the reasons stated, I would reverse the reckless homicide conviction and remand with instructions to discharge the defendant.[2]

---

2. In light of my view of the law applicable to the facts before us, I would further conclude that a conviction for criminal recklessness resulting in serious bodily injury, a Class C felony, would likewise be erroneous.