John E. WHITAKER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 26A04–0204–CR–164.

Court of Appeals of Indiana.

Nov. 13, 2002.

Lynne D. Lidke, Thomas E. Farrell, A. Jack Finklea, Scopelitis, Garvin, Light & Hanson, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

John Whitaker appeals his conviction for reckless homicide, a Class C felony. We reverse.

### Issue

The dispositive issue is whether there is sufficient evidence to sustain Whitaker's conviction.[1]

### Facts

The evidence most favorable to the conviction reveals that on the morning of August 22, 2001, Whitaker traveled south in his tanker truck on State Road 57 in Gibson County, a two-lane highway. He followed two to four car lengths behind a car driven by Kim Cox and traveled at around sixty miles per hour, which was five miles per hour above the speed limit. At approximately 8:00 a.m., Cox began braking and signaled that she was going to turn left onto County Road 950 East. Whitaker did not attempt to apply his brakes or otherwise evade Cox until almost the pre-

---

1. Our reversal on this issue makes it unnecessary to address Whitaker's claims of instructional error.

cise moment he struck her car in the rear. This propelled Cox's car into the oncoming lane of traffic, where it was run over by a dump truck. Cox died instantly. Photographs taken at the scene indicate that the weather was clear and the pavement was dry. Toxicology reports did not reveal any illicit drug or alcohol consumption by Whitaker, who had begun work at 7:00 a.m. after sleeping in his cab the night before. There was no evidence of any mechanical defects in Whitaker's truck.

The State charged Whitaker with reckless homicide. After a jury trial conducted on February 25–27, 2002, Whitaker was convicted as charged. He now appeals.

## Analysis

We acknowledge our traditionally deferential standard of review when considering questions of the sufficiency of the evidence to support a conviction. In reviewing a sufficiency claim, we neither reweigh the evidence nor assess the credibility of the witnesses. *Love v. State*, 761 N.E.2d 806, 810 (Ind.2002). We look to the evidence most favorable to the verdict and reasonable inferences drawn therefrom. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.* Nevertheless, evidence of guilt of substantial and probative value, as required to affirm a conviction, requires more than a mere scintilla of evidence. *Short v. State*, 564 N.E.2d 553, 557 (Ind.Ct.App.1991). Evidence that only tends to support a conclusion of guilt is insufficient to sustain a conviction, as evidence must support the conclusion of guilt beyond a reasonable doubt. *Id.* (citing *Vuncannon v. State*, 254 Ind. 206, 258 N.E.2d 639 (1970)).

Indiana Code Section 35–42–1–5 provides that "[a] person who recklessly kills another human being commits reckless homicide, a class C felony." "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2. "Proof that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtfulness of the driver of a vehicle, or from an error of judgment on his part, will not support a charge of reckless homicide." *Beeman v. State*, 232 Ind. 683, 690, 115 N.E.2d 919, 922 (1953).

It is helpful to review some of the cases that have addressed the evidence necessary to sustain a conviction for reckless homicide arising out of a motor vehicle collision. The following are examples of cases where the fact patterns were held sufficient to sustain a reckless homicide conviction: *Nichols v. State*, 591 N.E.2d 134, 137–38 (Ind.1992) (driving while intoxicated and substantially across the centerline for an extended period of time); *Anderson v. State*, 743 N.E.2d 1273, 1279 (Ind.Ct.App.2001) (a police officer driving through a flashing yellow light at 100 miles per hour without his lights or siren activated); *Carrigg v. State*, 696 N.E.2d 392, 395 (Ind.Ct.App.1998), *trans. denied.* (driving 50 miles per hour down a narrow residential street with a 30 mile per hour speed limit and cars parked on both sides, while another person was standing on a running board, holding onto the driver's side mirror); *Gibbs v. State*, 677 N.E.2d 1106, 1109 (Ind.Ct.App.1997), *trans. denied.* (operating a vehicle on a very dark highway during the early morning hours without headlights) (*but see* opinion of Sullivan, J., dissenting, 677 N.E.2d at 1109–11); *Green v. State*, 650 N.E.2d 307, 309 (Ind.Ct.App. 1995) (consuming alcohol and later driving around a corner at approximately 100 miles per hour); *Warner v. State*, 577 N.E.2d 267, 269–70 (Ind.Ct.App.1991)

(driving "erratically" and forty to fifty miles per hour where speed limit was thirty-five but snow and ice made twenty miles per hour the maximum safe speed); *Hergenrother v. State,* 425 N.E.2d 225, 228 (Ind.Ct.App.1981) (intentionally crossing the centerline for the purpose of greeting a friend according to a local custom).

On the other hand, the following cases held the facts were insufficient to support a reckless homicide conviction: *DeVaney v. State,* 259 Ind. 483, 493–94, 288 N.E.2d 732, 738–39 (1972) (driving while intoxicated and crossing the centerline without any indication of how long the defendant drove in the wrong lane); *Seibert v. State,* 239 Ind. 283, 286–89, 156 N.E.2d 878, 879–80 (1959) (attempting to pass another vehicle when the defendant's view was obstructed, in violation of the reckless driving statute); *Johnson v. State,* 164 Ind.App. 12, 20–21, 326 N.E.2d 637, 642–43 (1975) (similar to *DeVaney* ). Whitaker also directs us to a case from Illinois whose facts are very similar to this case, *People v. Frary,* 36 Ill.App.3d 111, 343 N.E.2d 233 (1976). In that case, the defendant was convicted of involuntary manslaughter and reckless homicide, which in Illinois required a showing that the defendant operated his vehicle recklessly or wantonly so as to demonstrate an utter disregard for the safety of others under circumstances likely to cause injury. *Id.* at 114, 343 N.E.2d at 236. The evidence established the defendant was traveling ten to fifteen miles per hour over the speed limit, or approximately seventy-five miles per hour, and one witness testified that the defendant was following "awfully close" behind the motorcycle he struck. *Id.* The Appellate Court of Illinois concluded, "[t]he only improper conduct with which defendant can reasonably be charged is failure to maintain a safe interval and driving in excess of the speed limit, which we hold is insufficient in

this case to prove beyond a reasonable doubt willful or wanton conduct, recklessness, or criminal negligence." *Id.* at 114–15, 343 N.E.2d at 236.

From these cases, we discern the following: relatively slight deviations from the traffic code, even if they technically rise to the level of "reckless driving," do not necessarily support a reckless homicide conviction if someone is subsequently killed. Some gross deviations from the traffic code, however, may under certain circumstances be such a substantial departure from acceptable standards of conduct that they will support a reckless homicide conviction, such as ignoring traffic signals at a high rate of speed, driving on a dark road at night without headlights, or intentionally crossing the centerline without a legitimate reason for doing so. Speed may support a reckless homicide conviction, but only greatly excessive speeds, such as twenty or more miles per hour over the posted speed limit, or where inclement weather and poor road conditions render higher speeds greatly unreasonable.

The State urges that this case is analogous to *Gibbs* and *Hergenrother,* the driving without headlights and crossing the centerline to greet a friend cases, respectively. In those cases, the defendants' reckless homicide convictions stemmed from conduct prohibited by the traffic code. Specifically, it is a Class C infraction to drive without headlights at night or to improperly cross over from the right half of a roadway into oncoming traffic. *See* I.C. §§ 9–21–7–2, 9–21–7–13, 9–21–8–2, 9–21–8–49. It is also a Class B or C infraction to drive in excess of posted speed limits and a Class C infraction to "follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of both vehicles, the

time interval between vehicles, and the condition of the highway." *See* I.C. §§ 9–21–5–13, 9–21–8–14, 9–21–8–49.[2]

█ There is a significant difference, however, between the traffic code violations in *Gibbs* and *Hergenrother* and the alleged traffic code violations in this case. First, viewing the evidence regarding Whitaker's speed in the light most favorable to the State, he was traveling approximately five miles per hour above the posted speed limit. However, the evidence also demonstrated that the two vehicles behind Whitaker were also traveling at about the same speed, and one witness expressly agreed that the flow of traffic was about sixty miles per hour. Thus, even if Whitaker was violating the traffic code by speeding, he also was traveling at the same speed as other motorists, making it clear that he was not substantially deviating from acceptable driving standards.

█ The State places more emphasis on Whitaker's allegedly following Cox's car at an unsafe distance. The only evidence as to how closely Whitaker was following Cox was his own testimony that he could not remember the precise distance, but that it could have two, three, or four car lengths. Tr. p. 491. However, whether one vehicle is too closely following behind another is a much more subjective and difficult question to answer than whether one is driving at night without lights or purposely crossing the center line for no legally valid reason. There is no precise definition of what constitutes a "reasonable and prudent" following distance, which as defined by the statute requires instantaneous and ever-changing mental calculations as to the speed of both vehicles, the time interval between them, and the condition of the highway. By contrast, driving without headlights at night or intentionally crossing a center line for no good reason readily appear to be inherently dangerous, no matter the circumstances, and it is unnecessary to resort to mental calculations weighing several factors to reach that conclusion.[3]

█ " 'There is no rule, other than that relating to the exercise of reasonable care, which prescribes a distance that must be maintained between vehicles while running along the highway.' " *Toenges v. Walter,* 109 Ind.App. 41, 50, 32 N.E.2d 95, 98 (1941) (quoting *Harnik v. Astoria Mahogany Co.,* 127 Misc. 41, 215 N.Y.S. 219, 220 (1926)).[4] Here, the State failed to introduce any evidence as to what a reasonable following distance in this case would have been, let alone that the distance Whitaker was actually following Cox represented a substantial deviation from what a reasonably safe distance would have been. In fact, there is no evidence as to what a "car

---

2. None of these infractions standing alone amount to "reckless driving" as defined by Indiana Code Section 9–21–8–52(a), although driving "at such an unreasonably high rate of speed" as to endanger the safety or property of others may qualify as such. Obviously, however, this entails more than simply exceeding the posted speed limit; otherwise, every person caught speeding would be guilty of a Class B misdemeanor, not a Class B or C infraction as provided in Indiana Code Section 9–21–5–13.

3. It should be noted that the defendant in *Hergenrother* admitted to intentionally crossing the center line. 425 N.E.2d at 228. Accidentally and briefly crossing the center will not support a reckless homicide conviction. *See DeVaney,* 259 Ind. at 493, 288 N.E.2d at 738.

4. There is a precise definition of a minimum following distance for one motor truck or tractor-trailer following behind another motor truck or tractor-trailer. *See* I.C. § 9–21–8–15.

length" is in feet and/or inches. The only evidence on this point was Whitaker's own testimony that he considered a following distance of three car lengths to be "standard." Tr. p. 466. He was traveling behind Cox's vehicle at approximately that distance. We also note that the witness who was directly behind Whitaker's truck testified that she herself was following Whitaker by about two to three car lengths and at about sixty miles per hour. There is a lack of evidence that the distance from which Whitaker was following Cox was so out of the ordinary as to be reckless.

▪▪ The State posits that the fact Whitaker failed to take any action to stop or evade Cox's car after she applied her brakes and signaled to turn is, in itself, evidence of his recklessness. Whitaker claimed at trial that he simply failed to notice that Cox was stopped until it was far too late for him to stop or avoid her car. This, however, would be evidence of inadvertence or lack of attention; in other words, negligence, not recklessness. *See Beeman,* 232 Ind. at 690, 115 N.E.2d at 922. At trial, the State urged the jury to draw another inference from this evidence, namely that Whitaker did see Cox stopped in front of him but calculated, erroneously, that she would turn before he reached her. Even so, this would represent a gross error in judgment, but again such an error constitutes negligence, not recklessness. *See id.* In short, this case involves a non-intoxicated, well-rested truck driver who drove slightly above the speed limit and arguably followed too closely behind another vehicle on a clear, dry day, with undeniably tragic results. We agree with our colleagues in Illinois that where there is evidence of non-excessive speeding and

some inconclusive indication of failing to maintain a proper interval, this is insufficient to establish guilt of reckless homicide beyond a reasonable doubt for a death resulting from a motor vehicle collision. *See Frary,* 36 Ill.App.3d at 114–15, 343 N.E.2d at 236. Whitaker's conviction for reckless homicide must be reversed.

▪▪ Our reversal of Whitaker's conviction is consistent with our state's chosen policy regarding the criminalization of fatal traffic collisions. Our General Assembly has deemed that neither "negligent homicide" nor "vehicular homicide" is a crime in Indiana, as they are in some states. Additionally, in 1977 the General Assembly modified the involuntary manslaughter statute. Previously, one could be convicted of involuntary manslaughter if one caused a death while committing "an offense"; this language permitted homicide convictions for deaths arising out of traffic collisions where it was proved that the defendant intentionally violated some provision of the traffic code. *See Napier v. State,* 255 Ind. 638, 642–43, 266 N.E.2d 199, 202–03 (1971). Now, to be convicted of involuntary manslaughter the offense committed must be battery, or one that inherently poses a risk of serious bodily injury and is a Class C or D felony or Class A misdemeanor.[5] Clearly, since at least 1977 it has been public policy in the state of Indiana that automobile accident deaths caused by negligence, even gross negligence, fall outside the realm of criminal prosecution, and that the mere violation of a traffic law as a cause of a collision will not automatically raise the death to the level of a homicide. Thus, to affirm the conviction in this case would effectively circumvent that policy and render it meaningless.

---

**5.** "Reckless driving" itself is a Class B misde- meanor. *See* I.C. § 9–21–8–52.

## Conclusion

The evidence is insufficient to sustain Whitaker's conviction for reckless homicide. We reverse.

Reversed.

BAKER, J., and VAIDIK, J., concur.