


FILED

Apr 10 2025, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Melvin Lee Weaver,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

April 10, 2025

Court of Appeals Case No.
24A-CR-766

Appeal from the Delaware Circuit Court

The Honorable Douglas K. Mawhorr, Judge

Trial Court Cause No.
18C03-2106-F5-97

---

**Opinion by Judge Bradford**
Judges May and Foley concur.

**Bradford, Judge.**

# Case Summary

[1]     On September 26, 2020, Melvin Weaver, while driving erratically at a high rate of speed, careened toward an intersection with a visible red light and stopped traffic. Weaver was not able to stop his vehicle before impact with another vehicle, causing a serious traffic incident that resulted in the death of another motorist. During the investigation into the incident, Weaver initially provided law enforcement with his father's name instead of his own. Weaver was subsequently charged with Level 5 felony reckless homicide, Level 6 felony obstruction of justice, and Class A misdemeanor driving while suspended. At trial, Weaver requested that the jury be instructed on negligence, arguing that the evidence could potentially support the inference that he had acted merely negligently, rather than recklessly. The trial court denied Weaver's request to instruct the jury on negligence, and the jury ultimately found Weaver guilty as charged.

[2]     On appeal, Weaver contends that the trial court abused its discretion in failing to instruct the jury on the definition of the term "negligence" and that it could not find him guilty of reckless homicide if it found that he had merely acted negligently. Weaver also contends that the trial court abused its discretion in admitting certain evidence and that the evidence is insufficient to sustain his reckless-homicide conviction. For its part, the State contends that the trial court did not abuse its discretion in either instructing the jury or admitting the

challenged evidence.  The State also contends that the evidence is sufficient to sustain Weaver's reckless-homicide conviction.  We affirm.

# Facts and Procedural History[1]

[3]     On September 26, 2020, Matthew and Anna Adams were driving a plum-colored car to pick up some food for dinner.  It was a "gorgeous day" outside; it was "dry and sunny."  Tr. Vol. II p. 155, 175.  Matthew was driving, and Anna was looking on her phone for someplace to eat.  A "silver-grey" colored car driven by Karmen Harvey was stopped at a red light on State Road 67,[2] at the intersection with McGalliard Road.  Tr. Vol. II p. 231.  There were two northbound lanes, and Harvey was in the right one.  Matthew and Anna drove up and stopped behind Harvey.  Harvey remembered looking back to see that Matthew and Anna "looked real happy."  Tr. Vol. II p. 233.  While Harvey and Matthew and Anna were stopped at the light, there was traffic going through the intersection along the cross-street.

[4]     Just prior to the collision, Harvey heard the sound of a vehicle accelerating.  While it had looked to Harvey like Matthew and Anna "were about to get into the other lane," their vehicle was immediately behind Harvey's vehicle at the time of impact.  Tr. Vol. II p. 235.  When Harvey looked in the rearview

---

[1] We held oral argument in this case on March 20, 2025, at the IU McKinney Law School.  We wish to thank the students, faculty, administration, and staff of McKinney for their warm hospitality.  We also commend counsel for the high quality of their arguments.

[2] Harvey referred to this portion of State Road 67 as the "Muncie By-pass[.]"  Tr. Vol. II p. 230.

mirror, she saw "a pick-up truck run over those people- the people behind me- and it hit my car- it hit me into the intersection where cars were coming[.]" Tr. Vol. II p. 234.

[5] Jerad Jennings, who had been driving in the lefthand lane at "55 or 60" miles per hour when Weaver passed him, felt like he was "standing still[.]" Tr. Vol. II p. 250; Vol. III p. 2. Jennings observed Weaver "hauling- very fastly- down the road" like a "Nascar." Tr. Vol. II p. 250. Jennings further observed that just prior to the collision, Weaver had been "driving erratic[ally,]" going "in and out of lanes- just whipping it," at speeds of approximately ninety miles per hour. Tr. Vol. III p. 2.

[6] Weaver's truck was straddling the dividing line between the two lanes of travel as it approached Matthew and Anna's car, which was stopped behind Harvey's vehicle. Jennings did not remember seeing the brake lights on Weaver's truck engage prior to the collision. Weaver was still traveling at a very high rate of speed when his truck "hauled right into the back" of Matthew and Anna's car, hitting their vehicle with "such impact it lifted [Weaver's] truck off the ground- came back- shot across the intersection- rolled it in the median across the intersection[.]" Tr. Vol. III p. 2. Matthew and Anna's vehicle was "flipped and rolled to the right side of the road where it landed on its wheels[.]" Tr. Vol. III p. 2. Jennings stopped his car and raced over to Matthew and Anna and saw that Matthew was dead and Anna was unconscious. He observed that Matthew and Anna "were interlocked- holding hands still." Tr. Vol. III p. 4.

[7] Officers from the Delaware County Sheriff's Office and the Indiana State Police went to the intersection after receiving reports of an automobile collision. Upon arriving at the scene of the collision, Sheriff's Deputy Daniel Sarten observed two vehicles with damage, "a small red car to the southeast of the intersection, and … a pick-up truck north of the intersection in the grassy median." Tr. Vol. II p. 133. Trooper Thomas Harbison responded to the scene, where he spoke with Weaver and asked Weaver for his driver's license, vehicle registration, and proof of insurance. Weaver did not provide any of the requested documents to Trooper Harbison. Weaver "verbally identified himself as Malvin Weaver."[3] Tr. Vol. II p. 194. Weaver also provided a birthdate from 1973, but Trooper Harbison observed that Weaver "did not appear to be that old." Tr. Vol. III p. 195.

[8] Trooper Harbison consulted a mobile database and, using the name and birthdate provided by Weaver, found a BMV photo for "Malvin Weaver" that "did not match" Weaver's appearance. Tr. Vol. II p. 195. Weaver re-asserted that his name was "Malvin[,]" before Trooper Harbison told Weaver that "that's not the truth- I've got a photograph showing that is not you- what is your name?" Tr. Vol. II p. 195. At that point, Weaver "verbally identified himself as Melvin Weaver." Tr. Vol. II p. 195. Weaver then provided Trooper Harbison with a birthdate from 1992, after which Trooper Harbison learned that Weaver's "driver's license status was suspended[.]" Tr. Vol. II p. 196.

---

[3] Malvin Weaver was subsequently determined to be Weaver's father.

Weaver claimed that he did not know that his license "was suspended" and claimed that he had been driving in the left-hand lane when "the Triumph- had cut over into his lane" and he did not have time to stop before colliding with the vehicle. Tr. Vol. II p. 196.

[9] On June 22, 2021, the State charged Weaver with Level 5 felony reckless homicide, Level 6 felony obstruction of justice, Class A misdemeanor reckless driving,[4] and Class A misdemeanor driving while suspended. A jury trial commenced on January 29, 2024.

[10] At trial, Weaver objected to the admission of a redacted copy of his BMV record ("the redacted BMV record"), which he anticipated that the State would be offering into evidence. Weaver argued that the redacted BMV record, although redacted to only show the relevant prior offense, would lead the jury to speculate as to what driving offenses had been redacted. For its part, the State argued that the redacted BMV record was highly probative to the question of whether Weaver's license had been suspended at the time he was driving. Weaver conceded that, if a redacted copy were to be admitted, the State's redactions reflected "the appropriate redactions[.]" Tr. Vol. II p. 167. The trial court ruled that the redacted BMV record would be admissible. The trial court

---

[4] The trial court granted the State's motion to dismiss the Class A misdemeanor reckless-driving charge prior to trial.

informed Weaver that it would provide a limiting instruction if Weaver requested one, which Weaver did.

[11] When the State moved to admit the redacted BMV record, Weaver objected, citing his previous arguments. The trial court overruled Weaver's objection, noting that the redacted BMV record would "be admitted over the objection of the Defendant." Tr. Vol. II p. 200. When providing the jury with its final instructions, the trial court instructed the jury that

> [i]f an exhibit contains redactions, you are to *completely* disregard them and just pay attention to the parts of the exhibit that are not redacted. Any redactions that have been made have been made pursuant to Indiana Law. You are not to speculate as to what may have been redacted or why it was redacted.

Appellant's App. Vol. II p. 223 (emphasis added). Weaver indicated that he had "[n]o objection" to the trial court's instruction. Tr. Vol. IV p. 18.

[12] In relation to the reckless-homicide charge, the trial court defined the term "reckless" and instructed the jury that in order to find Weaver guilty of Level 5 felony reckless homicide, the jury had to find, beyond a reasonable doubt, that Weaver had acted recklessly. Weaver, for his part, argued that his actions had been merely negligent and tendered a number of proposed jury instructions defining and relating to negligence. The trial court denied Weaver's request to give each of these proposed instructions.

Following trial, the jury found Weaver guilty of reckless homicide, obstruction of justice, and driving while suspended. The trial court subsequently sentenced Weaver as follows:

> 1. Count 1: Reckless Homicide, a Level 5 felony – 4 years to the [Department of Correction ("DOC")], Executed.
>
> 2. Count 2: Obstruction of Justice, a Level 6 felony – 2 years to the [DOC], 1 year executed and 1 year suspended, placed on probation with the Court's probation officer.
>
> 3. Count 4: Driving While Suspended, a Class A misdemeanor: 1 year to the Delaware County Jail, Suspended. The Defendant is placed on 1 year of probation with the Court's probation officer.

Appellant's App. Vol. III p. 105. The trial court ordered that "these sentences shall be served consecutively[,]" for an aggregate seven-year term, with five years executed in the DOC and two years suspended to probation. Appellant's App. Vol. III p. 106.

# Discussion and Decision

Weaver contends that the trial court abused its discretion in instructing the jury and in admitting the redacted BMV record. He also contends that the evidence is insufficient to sustain his reckless-homicide conviction.

## I. Jury Instructions

Weaver contends that the trial court abused its discretion in instructing the jury.

We review a trial court's manner of instructing the jury for an abuse of discretion. To determine if a trial court abused its discretion, we consider (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. Jury instructions are to be considered as a whole. A trial court acts within its discretion if it denies a request that would likely confuse the jury.

*Owen v. State*, 210 N.E.3d 256, 267–68 (Ind. 2023) (internal citations and quotation omitted), *reh'g denied*.

[16]     Weaver was charged with Level 5 felony reckless homicide. Pursuant to Indiana Code section 35-42-1-5, "[a] person who recklessly kills another human being commits reckless homicide, a Level 5 felony." As it relates to this charge, the trial court instructed the jury as follows:

INSTRUCTION NO. 5.

The crime of reckless homicide is defined by law as follows:

A person who recklessly kills another human being commits Reckless Homicide, a Level 5 felony.

Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:

1. The Defendant
2. recklessly
3. killed
4. Matthew Adams.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Reckless Homicide, a Level 5 felony, charged in Count 1.

****

INSTRUCTION NO. 11.

A person engages in conduct … "recklessly" if, he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result, and the disregard involves a substantial deviation from acceptable standards of conduct.

****

INSTRUCTION NO. 13.

Under the law of this State, a person charged with a crime is presumed to be innocent. This presumption of innocence continues in favor of the Defendant throughout each stage of the trial and you should fit the evidence presented to the presumption that the Defendant is innocent, if you can reasonably do so.

If the evidence lends itself to two reasonable interpretations, you must choose the interpretation consistent with the Defendant's innocence. If there is only one reasonable interpretation, you must accept that interpretation and consider the evidence with all the other evidence in the case in making your decision.

To overcome the presumption of innocence, the State must prove the Defendant guilty of each element of the crime charged, beyond a reasonable doubt.

The Defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

INSTRUCTION NO. 14.

The burden is upon the State to prove beyond a reasonable doubt that the Defendant is guilty of the crimes charged. It is a strict and heavy burden. The evidence must overcome any reasonable doubt concerning the Defendant's guilt. But it does not mean that a defendant's guilt must be proved beyond all doubt.

A reasonable doubt is a fair, actual and logical doubt based upon reason and common sense. A reasonable doubt may arise either from the evidence or from a lack of evidence. Reasonable doubt exists when you are not firmly convinced of the Defendant's guilt after you have weighed and considered all the evidence.

A defendant must not be convicted on suspicion or speculation. It is not enough for the State to show that the Defendant is probably guilty. On the other hand, there are very few things in this world that we know with absolute certainty. The State does not have to overcome every possible doubt.

The State must prove each element of the crime by evidence that firmly convinces each of you and leaves no reasonable doubt. The proof must be so convincing that you can rely and act upon it in this matter of the highest importance.

If you find that there is a reasonable doubt that the Defendant is guilty of the crime, you must give the Defendant the benefit of that doubt and find the Defendant not guilty of the crime under consideration.

Appellant's App. Vol. II pp. 208, 215, 217–18. The trial court's instructions make it clear that, in order to find Weaver guilty of Level 5 felony reckless homicide, the jury had to find, beyond a reasonable doubt, that Weaver had

acted recklessly. The instructions also make it clear that the jury had to resolve any doubt as to whether Weaver had acted recklessly in Weaver's favor.

[17] Weaver's defense at trial was that he had merely acted negligently, rather than recklessly. With regard to negligence, Weaver tendered the following proposed instruction defining the term:

> Negligence is the failure to use reasonable care.
>
> A person may be negligent by acting or by failing to act. A person is negligent if he or she does something a reasonably careful person would not do in the same situation, or fails to do something a reasonably careful person would do in the same situation.

Appellant's App. Vol. II p. 197. Weaver also proposed to modify the trial court's instruction on *mens rea* to include "[a] person engages in conduct 'negligently' if, by acting or failing to act, he does something a reasonably careful person would not do in the same situation, or fails to do something a reasonably careful person would do in the same situation." Appellant's App. Vol. II p. 197. Finally, Weaver proposed the following instruction: "Members of the jury, I instruct you, that if the Defendant, Melvin Weaver, were merely negligent in operating his automobile, then he is not criminally liable for Reckless Homicide, and your verdict must be not guilty." Appellant's App. Vol. II p. 198. The trial court denied Weaver's requests to give each of these proposed instructions.

[18]     In arguing that the trial court abused its discretion in refusing to give his proffered negligence instructions, Weaver cites the Indiana Supreme Court's opinion in *Cichos v. State*, 243 Ind. 187, 184 N.E.2d 1 (1962), and our opinions in *New v. State*, 135 N.E.3d 619 (Ind. Ct. App. 2019) and *Sipp v. State*, 514 N.E.2d 330 (Ind. Ct. App. 1987).

[19]     In *Cichos*, the defendant had been involved in a traffic collision that had resulted in the deaths of two other individuals. 243 Ind. at 189, 184 N.E.2d at 2. Prior to the collision, the defendant had stopped at a restaurant, where he had drunk coffee. *Id.*, 184 N.E.2d at 2. There was no other evidence highlighted in the Supreme Court's opinion detailing the collision which could potentially differentiate between negligent or reckless behavior. Concluding that because the parties had presented evidence that arguably could have supported a conclusion that the defendant had acted negligently rather than recklessly, the Supreme Court concluded that the trial court had erred by refusing to give jury instructions relating to negligence. Specifically, the Supreme Court stated:

> [w]hether the evidence in this case establishes that the deaths alleged in the indictment occurred from a mere accident, from negligent conduct or from willful and/or wanton misconduct so as to amount to recklessness, is dependent on the weight given the various aspects of the case and the evidence by the jury. The very purpose of the jury is to determine, after deliberation and pursuant to the court's instructions, the legal category into which the jury feels the defendant's conduct falls. The appellant's theory of the evidence and the law establishing such theory was never given to the jury in any instructions.
>
> It is therefore our decision that the failure to give appellant's

> tendered instructions above numbered and set forth, constituted such error as requires a reversal of this cause.

*Id.* at 192, 184 N.E.2d at 3.

[20] In *New*, after arguing with the victim, New had "put [her] vehicle in reverse and backed up, bumping into [the victim] and knocking her to the ground." 135 N.E3d at 621. The State had charged New with Class B misdemeanor criminal recklessness. *Id.* at 622. New's defense at trial had been that she had accidentally backed into the victim, and she had requested that the trial court instruct the jury on negligence in addition to recklessness. *Id.* The trial court had denied New's request. *Id.* On appeal, we concluded that New's defense had been that she had backed her vehicle into the victim by accident and "she was only negligent." *Id.* at 624. Concluding that there had been "some foundation in the evidence" to support New's assertion that she had acted negligently rather than recklessly, "[u]nder the circumstances presented," we determined that the trial court had abused its discretion in refusing to instruct the jury on negligence. *Id.*

[21] In *Sipp*, another motorist had died after Sipp's vehicle had slammed into the victim's vehicle. 514 N.E.2d at 330. Sipp had been charged with and convicted of Class C felony reckless homicide as a result of the incident. *Id.* Sipp appealed, arguing that the trial court had abused its discretion by failing to instruct the jury on negligence. *Id.* at 331. Concluding that the trial court had abused its discretion, we noted that

[t]he undisputed evidence shows that Sipp, traveling in excess of fifty miles per hour, side-swiped two cars stopped at a traffic light before slamming into the decedent's car, also stopped at the traffic light. Sipp, who suffers epileptic seizures, testified before the Grand Jury that he did not remember anything about the accident and believes he was suffering from a seizure, causing him to lose consciousness, at the time of the accident.

*Id.* at 330–31.

[22] While *Cichos*, *New*, and *Sipp* tend to support Weaver's contention that the trial court erred in refusing to instruct the jury on the question of negligence, these are not the only relevant authorities for us to consider. In *Springer v. State*, 798 N.E.2d 431, 435 (Ind. 2003), the Indiana Supreme Court noted that, when a defendant's legal defense is that he is not guilty of criminal recklessness because his actions did not meet the legal requirements of recklessness, negligence is an argument and not a legal defense to criminal recklessness. The Indiana Supreme Court opined that when a defendant's "negligence argument is simply a statement that [the] State failed to prove that he was reckless," so long as the jury is properly instructed on the definition of the reckless *mens rea*, no additional instruction is required. *Id.* The Indiana Supreme Court, however, acknowledged that a requested negligence instruction may be warranted when the conduct at issue is such that could be undertaken with due care. *Id.* at 436.

[23] Moreover, in *Shepherd v. State*, 155 N.E.3d 1227, 1239–40 (Ind. Ct. App. 2020), *trans. denied*, we rejected the assertion that "a defendant facing a charge involving reckless conduct is *always* entitled to" an instruction indicating that

negligent behavior is not sufficient to sustain a conviction for reckless homicide. (Emphasis added). On a dark, but clear and dry, morning, Shepherd had failed to stop for a school bus and had struck and killed six-year-old twins and their nine-year-old sister. *Id.* at 1230. Shepherd had been charged, *inter alia*, with three counts of Level 5 felony reckless homicide. *Id.* at 1231. After the trial court had refused to give Shepherd's proffered negligence instruction, a jury had found her guilty as charged. *Id.* at 1232. On appeal, Shepherd argued that the trial court had abused its discretion in refusing to give her proffered negligence instruction. *Id.* at 1238. We concluded that because Shepherd had failed to "detail for us what evidence she argues supports" her claim that the accident was caused by negligence, the trial court had not abused its discretion in failing to give her proffered instruction indicating that negligent behavior would not support a conviction for reckless homicide. *Id.* at 1240.

[24] In relying on *Cichos*, *New*, and *Sipp*, Weaver claims that he was engaged in conduct that could be undertaken with due care and that there was a genuine dispute as to whether he acted recklessly or merely negligently. Weaver bases his claim on his testimony that Matthew and Anna's vehicle had started to cross into the left lane as the traffic light turned green, and that he had not had the opportunity to stop his vehicle before impact. For its part, the State argues that the "record did not support giving an instruction about negligence." Appellee's Br. p. 16. The State asserts that

> [r]egardless of whether Matthew stayed still, as eyewitnesses testified, or Matthew attempted to change lanes, as Weaver

claims, it was Weaver's reckless conduct of driving between 75 to 90 miles an hour as he approached an intersection that deprived him of time to respond to changes in traffic ahead of him, if any. Driving at such high speeds, especially in the circumstances in this case, was a plain, conscious, and unjustifiable disregard to the safety of others precisely because of how it takes precious seconds away from Weaver's time to respond to any traffic hazards in front of him. Thus, Weaver's own claims *supported* a showing of recklessness. They did not support a theory that he was merely negligent.

Appellee's Br. pp. 16–17 (emphasis in original). In denying Weaver's request to instruct the jury on negligence, the trial court found that Weaver's self-serving testimony had not sufficiently raised the question of whether he had acted negligently rather than recklessly, such as to warrant the requested negligence instructions.

[25] While we generally recognize that conduct for which an individual can undertake due care generally includes driving a motor vehicle, we conclude that the specific circumstances leading to the traffic incident in this case overwhelmingly demonstrate that Weaver was not engaged in conduct that could be undertaken with due care. On a clear day, Weaver approached an intersection with traffic stopped at a red traffic light at an excessive speed. The posted speed limit was fifty-five miles per hour. Mere seconds before impact, Weaver was estimated to have been traveling at of speed between seventy-five to ninety miles per hour. Data recovered from Weaver's vehicle supports these estimates, showing the following:

| Time Prior to Impact | Speed |
|---|---|
| 2.5 Seconds | 75 |
| 2 Seconds | 75 |
| 1.5 Seconds | 74 |
| 1 Second | 73 |
| 0.5 Second | 68 |

Ex. Vol. p. 130. Witness testimony indicated that Weaver had been driving erratically just prior to impact, going "in and out of lanes- just whipping it[,]" making movements "like [a] Nascar[.]" Tr. Vol. III p. 2. Weaver did not contest the speeds recorded by his vehicle data. By his own claims, he was traveling twenty miles per hour over the posted speed limit two seconds prior to impact. By doing so, Weaver was committing a gross deviation of the traffic code. *See Whitaker v. State*, 778 N.E.2d 423, 426 (Ind. Ct. App. 2022 (noting that driving twenty miles per hour in excess of the posted speed limit is a gross deviation of the traffic code and can support a reckless-homicide charge), *trans. denied*. We cannot say that gross deviations of the traffic code are the type of conduct that may be undertaken with due care. As such, based on the constellation of facts before the trial court, including Weaver's act of driving erratically at a high rate of speed towards an intersection with stopped traffic, we cannot say that the trial court abused its discretion in rejecting Weaver's request to instruct the jury on negligence.

## II.   Sufficiency of the Evidence

Weaver also contends that the evidence is insufficient to sustain his reckless-homicide conviction.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (internal brackets, citations, emphasis, and quotations omitted). Stated differently, in reviewing the sufficiency of the evidence, "we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing evidence nor reassessing witness credibility" and "affirm the judgment unless no reasonable factfinder could find the defendant guilty." *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016).

[27] Again, in order to convict Weaver of Level 5 felony reckless homicide, the State was required to prove that Weaver "recklessly kill[ed] another human being." *See* Ind. Code § 35-42-1-5. "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c). Furthermore,

mere "'[p]roof that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtfulness of the driver of a vehicle, or from an error of judgment on his part, will not support a charge of reckless homicide.'" *Whitaker*, 778 N.E.2d at 425 (quoting *Beeman v. State*, 232 Ind. 683, 690, 115 N.E.2d 919, 922 (1953)).

[28] The question of whether the evidence is sufficient to sustain a reckless-homicide conviction is fact-specific. For instance, "relatively slight deviations from the traffic code" may not be sufficient to sustain a reckless-homicide conviction. *Id.* at 426. However, gross deviations from the traffic code, such as driving at greatly excessive speeds of twenty or more miles per hour over the posted speed limit, can support a reckless-homicide conviction. *Id.*

[29] Weaver cites *Whitaker* in support of his claim that the evidence was insufficient to sustain his conviction for Level 5 felony reckless homicide, claiming that the facts are similar to the facts in the instant case. In reversing Whitaker's conviction for reckless homicide, we noted that the facts "involve[d] a non-intoxicated, well-rested truck driver who drove slightly above the speed limit and arguably followed too closely behind another vehicle on a clear, dry day, with undeniably tragic results." *Whitaker*, 778 N.E.2d at 428. Just prior to the accident, Whitaker had been driving approximately "five miles per hour above the speed limit." *Id.* at 424. He had failed to "attempt to apply his brakes or otherwise evade [the deceased] until almost the precise moment he struck her car in the rear." *Id.* at 424–25. We concluded that these facts were insufficient to prove that Whitaker had committed reckless homicide. *Id.* at 428.

[30]   Weaver also cites *State v. Boadi*, 905 N.E.2d 1069, 1070 (Ind. Ct. App. 2009), in which Boadi, traveling under the posted speed limit, failed to stop at red light and, after traveling into the intersection, struck another vehicle, killing another motorist. In concluding that the trial court had not erred by acquitting Boadi as a matter of law due to a complete lack of evidence of recklessness, we noted the following facts:

> Boadi did not accelerate toward the light; indeed, Boadi traveled through the intersection at a speed below the speed limit. There is no evidence that Boadi was driving erratically or under the influence of alcohol or drugs. There is no evidence that Boadi was fatigued or in any way failing to comply with trucking regulations. Boadi stopped immediately after the accident and did not flee. In sum, the evidence as a whole viewed in the light most favorable to the State shows that Boadi did not stop but instead proceeded through the intersection as the light turned green for the opposing traffic. Although this conduct might be evidence of inadvertence or an error in judgment, that is, negligence, such an error does not constitute criminal recklessness.

*Boadi*, 905 N.E.2d at 1075.

[31]   Weaver additionally cites *Seibert v. State*, 239 Ind. 283, 285, 156 N.E.2d 878, 878 (Ind. 1959), in which Seibert had attempted to pass another vehicle while on a slope where his vision "was obstructed for a distance of less than five hundred feet ahead[.]" The Indiana Supreme Court's opinion in *Seibert* does not mention speed or any other potential deviation from the traffic code beyond Seibert's attempt to pass another vehicle on a slope when his vision was

obstructed.  239 Ind. 284–85, 156 N.E.2d at 878–79.  In reversing Seibert's

conviction, the Indiana Supreme Court concluded that the

> evidentiary facts contradict the ultimate fact that when appellant
> attempted to pass he had knowledge or was chargeable with
> knowledge that his view ahead was obstructed and that
> nevertheless he attempted to pass, knowing his action would
> probably result in injury to others.
>
> Conceivably, but without so deciding, it could be argued that
> appellant was *negligent* in not using greater care to determine that
> his view was obstructed before attempting to pass, or that he
> exercised poor judgment in attempting to extricate himself from
> the situation in which he found himself after he became aware of
> his perilous position.
>
> However, under the circumstances here presented, the evidence
> is not sufficient to sustain the verdict of the jury on the question
> of reckless disregard for the safety of others.

*Id.* at 288–89, 156 N.E.2d at 880 (emphasis in original).

[32]     In challenging the sufficiency of the evidence to sustain his reckless-homicide

conviction, Weaver argues that

> [a]s in *Whitaker*, *Seibert*, and *Boadi*, the only reasonable inference
> from the evidence is that Weaver, at worst, acted negligently.
> Weaver failed to maintain a reasonable speed and keep a
> lookout.  This occurred during daylight hours, there was no
> evidence of fatigue, and there was no evidence he used drugs or
> alcohol.  Weaver did not engage in a plain, conscious, and
> unjustifiable disregard of a harm that arouse to a substantial
> deviation from acceptable standards of conduct.  His conduct
> was an error in judgment—it was not criminal recklessness.

Appellant's Br. p. 30.

[33] For its part, the State argues that each of the above cases can be distinguished from the instant matter because in each, "the accidents that resulted in the deaths of other people involved a defendant making an inadvertent mistake or showing poor judgment while otherwise operating their vehicles safely at a reasonable speed." Appellee's Br. p. 24. The State further argues that, unlike the cases relied on by Weaver, in this case, the evidence supporting the jury's verdict demonstrates that Weaver's conduct did not reflect a slight deviation from the traffic code but, rather, constituted a substantial departure from acceptable standards of conduct.

[34] The State asserts that the evidence supports the jury's determination that the collision at issue in this case was not the result of inattention, inadvertence, thoughtlessness, or a minor error in judgment. Jennings described Weaver's driving as erratic and "[g]oing like [a] Nascar[,]" with Weaver "whipping" his vehicle between lanes just prior to the accident. Tr. Vol. II p. 250; Tr. Vol. III p. 2. As Weaver approached the intersection at which the victim's vehicle was stopped at a red light, Weaver was traveling between seventy-five and ninety miles per hour in a fifty-five-miles-per-hour zone. The State notes that the Indiana Supreme Court has upheld a reckless-homicide conviction in a somewhat similar case, the only notable difference being that the defendant had been approaching a construction zone, rather than a traffic light, at a high speed and had failed to stop prior to impact. *See Beeman*, 232 Ind. at 691, 115 N.E.2d at 923.

While Weaver claimed that Matthew had pulled his vehicle into Weaver's path, other witness testimony contradicted Weaver's self-serving claim. The jury, acting as the trier-of-fact, was entitled to determine which witnesses' testimony to believe and which to disbelieve. *See Sallee v. State*, 51 N.E.3d 130, 135 (Ind. 2016) (providing that the jury was entitled to credit or discredit a particular witness's testimony). In finding Weaver guilty, the jury apparently credited the other witnesses' testimony over Weaver's testimony. Weaver's challenge to the sufficiency of the evidence amounts to nothing more than an invitation to reweigh the evidence, which we will not do. *See Griffith*, 59 N.E.3d at 958.

## III.   Admission of Evidence

Weaver last contends that the trial court abused its discretion in admitting certain evidence. "The general admission of evidence at trial is a matter we leave to the discretion of the trial court." *Clark v. State*, 994 N.E.2d 252, 259–60 (Ind. 2013) (internal citation omitted). "We review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260 (internal citation omitted). "[W]e will not reverse the decision to admit or exclude evidence if that decision is sustainable on any ground." *Carpenter v. State*, 15 N.E.3d 1075, 1078 (Ind. Ct. App. 2014), *trans. denied*.

Weaver argues that the trial court abused its discretion in admitting the redacted BMV record because, even in its redacted form, it was unfairly

prejudicial as it evidenced other prior bad acts that he had allegedly committed. Weaver asserts that the redacted BMV record "had *absolutely* no probative value to [his] felony charges." Appellant's Br. p. 32 (emphasis in original). While this may very well be true, Weaver was also on trial for Class A misdemeanor driving while suspended. Notably, Weaver did not request bifurcation of this misdemeanor charge or seek to resolve it prior to trial. Therefore, as we review Weaver's contention that the trial court abused its discretion in admitting the redacted BMV record into evidence, we cannot consider only whether it was relevant to the felony charges but must also consider whether the redacted BMV record was relevant to prove the misdemeanor driving-while-suspended charge.

[38]   Generally, "an individual who operates a motor vehicle upon a highway while the individual's driving privileges, driver's license, or permit is suspended or revoked commits a Class A infraction." Ind. Code § 9-24-19-1. However, an individual who

> (1) knows that the individual's driving privileges, driver's license, or permit is suspended or revoked; and
>
> (2) operates a motor vehicle upon a highway less than ten (10) years after the date on which judgment was entered against the individual for a prior unrelated violation of section 1 of this chapter…

commits a Class A misdemeanor.

Ind. Code § 9-24-19-2. Thus, in order to prove that Weaver had committed Class A misdemeanor driving while suspended, the State was required to prove

that Weaver had, within the previous ten years, been convicted, under Indiana Code section 9-24-19-1, of driving while suspended. The State sought to prove this fact through the admission of the redacted BMV record, with all entries but the relevant infraction redacted from view. Weaver objected to the admission of the redacted BMV record, citing Evidence Rules 401, 403, and 404.

[39] Evidence Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Again, Weaver argues that the redacted BMV record "had *absolutely* no probative value to [his] felony charges." Appellant's Br. p. 32 (emphasis in original). However, the State asserts that the redacted BMV record was not admitted to prove any fact relating to Weaver's felony charges but rather the Class A misdemeanor driving-while-suspended charge. The State further asserts that the redacted BMV record was clearly relevant to prove this fact. We agree.

[40] Evidence Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Evidence Rule 404(b)(1) provides that evidence "of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." As it relates to Evidence Rules 403 and 404, Weaver argues that "[t]here were alternative pieces of evidence to prove [he] was driving while suspended" or, alternatively, that the State could

have redacted the record in a less-prejudicial manner. Appellant's Br. p. 33. Weaver asserts that the way in which the redacted BMV record was redacted was highly prejudicial because it "showed the number" of infractions, convictions, and/or suspensions that had been redacted from his BMV record. Appellant's Br. p. 34. However, despite objecting to the admission of the redacted BMV record, Weaver acknowledged that "I would agree that that is likely the appropriate redactions if a redacted version is to be put forth." Tr. Vol. II p. 167. He did not request any additional redactions to the redacted BMV record.

[41] The trial court also specifically instructed the jury that it was not to consider any of the redacted information, instructing the jury that

> [i]f an exhibit contains redactions, you are to *completely disregard* them and just pay attention to the parts of the exhibit that are not redacted. Any redactions that have been made have been made pursuant to Indiana Law. You are not to speculate as to what may have been redacted or why it was redacted.

Appellant's App. Vol. II p. 223 (emphasis added). Weaver does not mention this instruction in arguing that the trial court abused its discretion in admitting the redacted BMV record. As we have previously noted, "the Indiana Supreme Court has held that '[o]n appeal, [appellate courts] must presume that the jury obeyed the trial court's instructions in reaching its verdict.'" *Poortenga v. State*, 99 N.E.3d 691, 697 (Ind. Ct. App. 2018) (quoting *Webster v. State*, 413 N.E.2d 898, 901, 274 Ind. 668, 673 (1980)) (brackets in *Poortenga*). "Thus, when the jury has been instructed not to consider specific evidence or argument, 'we will

assume that the jury followed the instructions.'" *Id.* (quoting *Webster*, 274 Ind. at 673, 413 N.E.2d at 901).

[42] Weaver further argues that admission of the redacted BMV record was not harmless because it was likely that the jury had relied on it in finding him guilty of reckless homicide, claiming that the "reckless homicide case was a close call where the jury deliberated for hours. The BMV report was a poison pill that had a substantial likelihood of affecting the jury's evaluation on the most serious charge." Appellant's Br. pp. 34–35. We cannot agree. Nothing in the record supports Weaver's assertion that the jury may have considered the redacted BMV record for any purpose other than deciding whether the State had proven the Class A misdemeanor driving-while-suspended charge. The redacted BMV record was relevant to prove a charged offense. We agree with the State that Weaver "has not overcome the presumption that the jury followed the trial court's instruction not to consider" the redacted portion of the document. Appellee's Br. p. 32. As such, we conclude that the trial court did not abuse its discretion in admitting the redacted BMV record into evidence.

[43] The judgment of the trial court is affirmed.

May, J., and Foley, J., concur.

ATTORNEYS FOR APPELLANT

Mark K. Leeman
Leeman Law Offices
Logansport, Indiana

Tom F. Hirschauer, III
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana